**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, | |
| *Plaintiff*, | Case No. 7:25-cv-00369 |
| v. | **Complaint for Patent Infringement** |
| GOOGLE LLC, | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., in which Plaintiff Headwater Research LLC ("Headwater") alleges as follows against Defendant Google LLC ("Google"):

1. This complaint arises from Google's unlawful infringement of U.S. Patent Nos. 8,639,935 ("'935 patent"), 9,609,510 ("'510 patent"), 9,973,930 ("'930 patent"), 11,096,055 ("'055 patent"), 11,405,429 ("'429 patent"), 11,966,464 ("'464 patent"), 11,985,155 ("'155 patent"), (collectively, "Asserted Patents").

2. The Accused Instrumentalities are Google's mobile electronic devices, including mobile phones and tablets used, made, offered for sale, sold, and/or imported by Google in the United States and supplied by Google to customers in the United States, Google's cellular networks, servers, and services made, used, offered for sale, sold, and/or imported by Google in the United States as well as eSIM-enabled devices, including devices used, offered for sale, and/or sold by Google in the United States, that operate on Google's network, such as Google's mobile virtual network operator (MVNO) Google Fi.

**BACKGROUND REGARDING HEADWATER AND DR. RALEIGH**

3. Dr. Gregory Raleigh—the primary inventor of the Asserted Patents—is a world-renowned scientist, inventor, and entrepreneur, with over 25 years of executive experience in several technology sectors including networking, cloud software, consumer services, wireless and military systems. Dr. Raleigh holds Ph.D. and Masters degrees in Electrical Engineering from Stanford University, and is the inventor of over 350 issued U.S. and international patents in several fields including radio systems and components, radar, mobile operating systems, cloud services, IoT, networking, consumer electronics, radiation beam cancer therapy and medical imaging.

4. Dr. Raleigh has a long and distinguished record of significant contributions and advancements in wireless communications technology. His inventions, companies, and products have profoundly and positively impacted virtually every aspect of the mobile device and communications market. In 2005, Dr. Raleigh was named one of the "50 most powerful people in networking" because of his discoveries in wireless technology, and his work in multiplying the capacity of a radio link using multiple transmission and receiving antennas to exploit multipath propagation was described as the "most important wireless technology in the works." *See* https://web.archive.org/web/20220628132409/https://www.networkworld.com/article/2316916/the-50-most-powerful-people-in-networking.html?page=2.

5. In 1996, while at Stanford University, Dr. Raleigh presented the first mathematical proof demonstrating that multiple antennas may be used with special signal processing techniques to transmit multiple data streams at the same time and on the same frequency while in the presence of naturally occurring multipath propagation. Dr. Raleigh's work at Stanford has been widely adopted in modern multiple-input and multiple-output ("MIMO") radio communication and

implemented in major wireless communication standards including 4G and 5G. *See, e.g.*, https://en.wikipedia.org/wiki/Gregory_Raleigh.

6. Dr. Raleigh's groundbreaking work solved problems that had existed in wireless communication since the late 1800s and overturned a century of research and practice in the fields of radio science and wireless communication theory. His work revealed that a new class of MIMO signal processing architectures would allow wireless devices to transmit multiple data streams at the same time on the same frequency thereby multiplying the capacity of wireless networks.

7. Based on his discoveries, Dr. Raleigh co-founded Clarity Wireless to develop smart antenna products incorporating the advances of his MIMO signal processing architecture, and obtained patents now used in 4G and 5G cellular and Wi-Fi standards. Field trials of the smart antennas developed by Clarity Wireless demonstrated performance significantly above anything else contemplated at the time and continue to set standards for multipath broadband wireless access links. Shortly after those field trials, Cisco acquired Clarity in 1998 and hired Dr. Raleigh to continue to commercialize these technologies.

8. After leaving Cisco, Dr. Raleigh founded Airgo Networks to develop the world's first MIMO wireless chipsets, networking software, reference design systems and commercial OEM products. Airgo Networks' chipset products significantly improved the speed and reliability of Wi-Fi, leading to the adoption of its technology as the core of Wi-Fi radio standards since 2006, and adoption of the chipsets into products sold across the globe. In 2006, Qualcomm acquired Airgo Networks and hired Dr. Raleigh to continue to commercialize these technologies. The Airgo team at Qualcomm spearheaded the creation of Wi-Fi standards and developed the first Qualcomm Wi-Fi chips for cell phones.

9. Dr. Raleigh's innovations at Clarity Wireless, Cisco, Airgo Networks, and Qualcomm, resulted in widespread adoption of his technologies in a multitude of cellular and Wi-Fi standards, such as LTE, WiMAX, 802.11n, 802.11ac (Wi-Fi 5), and 802.11ax (Wi-Fi 6).

10. After successfully founding and selling Clarity Wireless and Airgo Networks to Cisco and Qualcomm, respectively, Dr. Raleigh shifted his focus from solving radio-centric problems to solving problems in how wireless services are provided to consumers. Dr. Raleigh foresaw significant data demand problems presented by the advent and adoption of smartphones. He sought to solve these data demand problems by improving end-user wireless devices and the services that support them.

11. In 2008, Dr. Raleigh formed Headwater to develop mobile operating systems and cloud technology, which today, underpin the mobile phone and app industries. The patents in this action describe and claim some of the extraordinary inventions developed by Dr. Raleigh and the Headwater team.

12. Smartphones and other mobile devices have become ubiquitous and inseparable components of our daily lives, allowing us to make and receive phone calls, get notifications, download music, upload photos, stream entertainment, transact business, exchange ideas, and keep us connected to our family and friends whether they are down the hall or around the globe. Users can get email, install apps, and browse the internet from these tiny devices by making use of data connectivity services. These devices accomplish these amazing feats by exchanging staggering amounts of data over the internet using wireless and cellular networks, relying on ubiquitous data connectivity to keep users up-to-date and connected.

13. Since 2011, mobile device data demand has exploded—increasing by almost 400%—with each user consuming approximately 11.5 gigabytes of data per month. In the

aggregate, this equates to approximately 90 exabytes of data consumption per month. *See, e.g.*, https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-visualizer?f=9&ft=2&r=1&t=11,12,13,14,15,16,17&s=4&u=3&y=2011,2027&c=3. For context: a single exabyte of data is equivalent to one billion gigabytes of data. Said another way, if one gigabyte is the size of the Earth, then an exabyte is the size of the sun. *See, e.g.*, https://www.backblaze.com/blog/what-is-an-exabyte/.

14. And mobile device data demand shows no sign of slowing down. Between now and 2027, mobile data demand is projected to increase more than three-fold, from 90 exabytes per month to a staggering 282 exabytes per month, with each user consuming an average of 41 gigabytes of data each and every month. *See, e.g.*, https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-calculator?up=2&bp=1&v=0&c=2; https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-visualizer?f=9&ft=2&r=1&t=11,12,13,14,15,16,17&s=4&u=3&y=2011,2027&c=3.


Mobile data traffic
Unit: EB/month
All technologies
All devices
Year: 2011 - 2027
Source: Ericsson (June 2022)
300
250
200
150
100
50
0
2011 2012 2013 2014 2015 2016 2017 2018 2019 2020 2021 2022 2023 2024 2025 2026 2027
All technologies


Ericsson Mobility Calculator
Your example of calculated monthly consumption.
11.45 GB
World average 2027 average monthly consumption.
40.99 GB
2.37 GB (20.6%)
0.9 GB (7.8%)
1.9 GB (16.5%)
3.76 GB (32.7%)
1.88 GB (16.3%)
5.7 GB (13.9%)
4.5 GB (11%)
7.3 GB (17.8%)
6.52 GB (15.9%)
6.84 GB (16.7%)
4.45 GB (10.9%)
Downloads
Messaging traffic
App traffic
Audio streaming
Video streaming

15. Also in 2008, Dr. Raleigh founded ItsOn Inc., which licensed Headwater's intellectual property and implemented Headwater's technology into software and services that expanded cellular service plan offerings and improved device and data management capabilities. The tools and technologies delivered by ItsOn allowed carriers to implement Headwater's technologies in end-user devices—such as mobile phones and tablets—opening up new business models while also providing greater flexibility to carriers and device manufacturers, allowing them to reduce costs while simultaneously improving their devices and services.

16. The Headwater technologies disclosed in the Asserted Patents laid the groundwork for many of the infringing features and functionalities that help device manufacturers, wireless carriers, and customers reduce data usage and network congestion, extend battery life by decreasing power consumption, and enable users to stay connected.

## PLAINTIFF HEADWATER AND THE ASSERTED PATENTS

17. Plaintiff Headwater was formed in 2011 and has been in continued existence and operation since that time. Headwater is a Texas limited liability company organized under the laws of Texas, with its headquarters at 110 North College Avenue, Suite 1116, Tyler, Texas 75702.

18. Headwater is the owner of U.S. Patent No. 8,639,935, titled "Automated device provisioning and activation," which issued January 28, 2014. A copy of the '935 patent is attached to this complaint as Exhibit 1.

19. Headwater is the owner of U.S. Patent No. 9,609,510 entitled "Automated credential porting for mobile devices," which issued on March 18, 2017. A copy of the '510 patent is attached to this complaint as Exhibit 2.

20. Headwater is the owner of U.S. Patent No. 9,973,930, titled "End user device that secures an association of application to service policy with an application certificate check," which

issued May 15, 2018. A copy of the ’930 patent is attached to this complaint as Exhibit 3.

21. Headwater is the owner of U.S. Patent No. 11,096,055, entitled “Automated device provisioning and activation,” which issued on August 17, 2021. A copy of the ’055 patent is attached to this complaint as Exhibit 4.

22. Headwater is the owner of U.S. Patent No. 11,405,429, entitled “Security techniques for device assisted services,” which issued on August 2, 2022. A copy of the ’429 patent is attached to this complaint as Exhibit 5.

23. Headwater is the owner of U.S. Patent No. 11,966,464, titled “Security techniques for device assisted services,” which issued April 23, 2024. A copy of the ’464 patent is attached to this complaint as Exhibit 6.

24. Headwater is the owner of U.S. Patent No. 11,985,155, titled “Automated device provisioning and activation,” which issued on May 14, 2024. A copy of the ’155 patent is attached to this complaint as Exhibit 7.

## DEFENDANT GOOGLE AND THE ACCUSED INSTRUMENTALITIES

25. On information and belief, Google LLC is a wholly-owned subsidiary of Alphabet, Inc, and a Delaware limited liability company, with an established place of business at 500 West 2nd Street, Austin Texas 78701 at which Google can be served with process.

26. The Accused Instrumentalities are Google’s mobile electronic devices, including mobile phones and tablets used, made, offered for sale, sold, and/or imported by Google in the United States and supplied by Google to customers in the United States, as well as eSIM-enabled devices, including devices used, offered for sale, and/or sold by Google in the United States, that operate on Google’s network, such as Google’s mobile virtual network operator (MVNO) Google Fi, identified in Exhibits 8 through 14.

**JURISDICTION AND VENUE**

27. This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq.

28. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

29. This Court has personal jurisdiction over Google in this action because Google has committed acts of infringement within this District giving rise to this action, has a regular and established place of business in this District, and has established minimum contacts with this forum such that the exercise of jurisdiction over Google would not offend traditional notions of fair play and substantial justice. Google, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products and/or services in Texas and the Western District of Texas, regularly does business or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in Texas, and commits acts of infringement of Headwater's patents in this District by, among other things, supplying, distributing, developing, making, using, offering to sell, and selling Google devices and/or offer services including Google Fi.

30. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, Google resides in this District and/or has committed acts of infringement and has a regular and established place of business in this District. For example, Google invested $20 million to build a corporate office at 500 West 2nd Street, Austin, Texas 78701. *See, e.g.*, https://trerc.tamu.edu/news-talk/google-this-20-2m-design-budget-for-austin-office/. Google also has a retail store in this District at 11701 Domain Blvd., Austin, TX 78758, where Google sells the Accused Devices including phones, tablets, watches, and smart devices.

*See, e.g.*, https://store.google.com/magazine/google-store-domainnorthside-austin?hl=en-US; https://www.statesman.com/story/business/2025/05/30/google-domain-northside-austin-store-opening/83944025007/.

31. Further, upon information and belief, Google has admitted or not contested proper venue in this Judicial District in other patent infringement actions.

**COUNT 1 – INFRINGEMENT OF THE '935 PATENT**

32. Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

33. On January 28, 2014, the United States Patent and Trademark Office issued U.S. Patent No. 8,639,935, titled "Automated device provisioning and activation." Ex. 1.

34. Headwater is the owner of the '935 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

35. The written description of the '935 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

36. Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '935 patent, and Headwater is entitled to damages for Google's past infringement.

37. Google has directly infringed (literally and equivalently) and induced others to infringe the '935 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '935 patent and by inducing others to infringe the claims of

the ’935 patent without a license or permission from Headwater, such as for example inducing any users of the Accused Instrumentalities to perform the patented methods of the ’935 patent.

38. Exhibit 8 provides a description of the Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the ’935 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

39. Google knowingly and intentionally induces and contributes to infringement of the ’935 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Google has had knowledge of or has been willfully blind to the ’935 patent and the infringing nature of the Accused Instrumentalities at least because the ItsOn software included a patent marking notice which listed the ’935 patent, and through at least the filing and service of this Complaint. As indicated by the Google Patents webpage for the ’935 patent, multiple patents assigned to Google also cite family members of the ’935 patent.

40. Despite this knowledge, Google continues to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the ’935 patent. Google does so knowing and intending that their customers will commit these infringing acts. Google also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the ’935 patent, thereby specifically intending for and inducing their customers to infringe the ’935 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

41. Google has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute

willful infringement of the ’935 patent.

42. Google has induced, and continue to induce, infringement of the ’935 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instruction to its customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

43. Headwater has been damaged by Google’s infringement of the ’935 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 2 – INFRINGEMENT OF THE ’510 PATENT

44. Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

45. On March 28, 2017, the United States Patent and Trademark Office issued U.S. Patent No. 9,609,510, entitled “Automated Credential Porting For Mobile Devices.” Ex. 2.

46. Headwater is the owner of the ’510 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

47. The written description of the ’510 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

48. Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the ’510 patent, and Headwater is entitled to damages for

Google's past infringement.

49. Google has directly infringed (literally and equivalently) and induced others to infringe the '510 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '510 patent and by inducing others to infringe the claims of the '510 patent without a license or permission from Headwater.

50. Exhibit 9 provides a description of the Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the '510 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

51. Google knowingly and intentionally induces and contributes to infringement of the '510 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Google has had knowledge of or has been willfully blind to the '510 patent and the infringing nature of the Accused Instrumentalities, at least because the '510 patent has been asserted against Samsung's devices that use the Android Operating System, and Samsung filed an *inter partes* ("IPR") petition, IPR 2025-00483, of the '510 patent. On information and belief, Samsung shared the complaint asserting the '510 patent and/or the IPR petition with Google.

52. Despite this knowledge, Google continues to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '510 patent. Google does so knowing and intending that their customers will commit these infringing acts. Google also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '510 patent, thereby specifically intending for and inducing their customers to infringe the '510 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and

instructions to their customers; and indemnifying patent infringement within the United States.

53. Google has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the ’510 patent.

54. Google has induced, and continue to induce, infringement of the ’510 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instruction to its customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

55. Headwater has been damaged by Google’s infringement of the ’510 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 3 – INFRINGEMENT OF THE ’930 PATENT

56. Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

57. On May 15, 2018, the United States Patent and Trademark Office issued U.S. Patent No. 9,973,930, titled “End user device that secures an association of application to service policy with an application certificate check.” Ex. 3.

58. Headwater is the owner of the ’930 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

59. The written description of the ’930 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

60. Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the ’930 patent, and Headwater is entitled to damages for Google’s past infringement.

61. Google has directly infringed (literally and equivalently) and induced others to infringe the ’930 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the ’930 patent and by inducing others to infringe the claims of the ’930 patent without a license or permission from Headwater.

62. Exhibit 10 provides a description of the Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the ’930 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

63. Google knowingly and intentionally induces and contributes to infringement of the ’930 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Google has had knowledge of or has been willfully blind to the ’930 patent and the infringing nature of the Accused Instrumentalities, at least because the ItsOn software included a patent marking notice which listed patents in the same family as the ’930 patent.

64. Despite this knowledge, Google continues to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the ’930 patent. Google does so knowing and intending that their customers will commit these infringing acts. Google also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the ’930 patent, thereby specifically intending for and inducing their customers to infringe the ’930 patent through the normal and customary use of the

Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

65. Google has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the ’930 patent.

66. Google has induced, and continue to induce, infringement of the ’930 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instruction to its customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

67. Headwater has been damaged by Google’s infringement of the ’930 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 4 – INFRINGEMENT OF THE ’055 PATENT

68. Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

69. On August 17, 2021, the United States Patent and Trademark Office issued U.S. Patent No. 11,096,055, entitled “Automated device provisioning and activation.” Ex. 4.

70. Headwater is the owner of the ’055 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

71. The written description of the ’055 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how

the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

72. Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the ’055 patent, and Headwater is entitled to damages for Google’s past infringement.

73. Google has directly infringed (literally and equivalently) and induced others to infringe the ’055 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the ’055 patent and by inducing others to infringe the claims of the ’055 patent without a license or permission from Headwater.

74. Exhibit 11 provides a description of the Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the ’055 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

75. Google knowingly and intentionally induces and contributes to infringement of the ’055 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Google has had knowledge of or has been willfully blind to the ’055 patent and the infringing nature of the Accused Instrumentalities, at least because the ItsOn software included a patent marking notice which listed patents in the same family as the ’055 patent. As indicated by the Google Patents webpage for the ’055 patent, multiple patents assigned to Google also cite family members of the ’055 patent.

76. Despite this knowledge, Google continues to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the ’055 patent. Google does so knowing and intending that their customers will commit these infringing acts. Google also continues to make, use, offer for sale, sell, and/or import the Accused

Instrumentalities, despite its knowledge of the ’055 patent, thereby specifically intending for and inducing their customers to infringe the ’055 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

77. Google has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the ’055 patent.

78. Google has induced, and continue to induce, infringement of the ’055 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instruction to its customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

79. Headwater has been damaged by Google’s infringement of the ’055 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

**COUNT 5 – INFRINGEMENT OF THE ’429 PATENT**

80. Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

81. On August 2, 2022, the United States Patent and Trademark Office issued U.S. Patent No. f, entitled “Security techniques for device assisted services.” Ex. 5.

82. Headwater is the owner of the ’429 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

83. The written description of the ’429 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

84. Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the ’429 patent, and Headwater is entitled to damages for Google’s past infringement.

85. Google has directly infringed (literally and equivalently) and induced others to infringe the ’429 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the ’429 patent and by inducing others to infringe the claims of the ’429 patent without a license or permission from Headwater, such as for example instructing users of the Accused Instrumentalities to perform the patented methods of the ’429 patent.

86. Exhibit 12 provides a description of the Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the ’429 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

87. Google knowingly and intentionally induces and contributes to infringement of the ’429 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Google has had knowledge of or has been willfully blind to the ’429 patent and the infringing nature of the Accused Instrumentalities, at least because the ’429 patent has been asserted against Samsung’s devices that use the Android Operating System, and Samsung filed an *inter partes* (“IPR”) petition, IPR 2025-00482, of the ’429 patent. On information and belief, Samsung shared the complaint asserting the ’429 patent and/or the IPR petition with Google. As indicated by the Google Patents webpage

for the ’429 patent, multiple patents assigned to Google also cite family members of the ’429 patent.

88. Despite this knowledge, Google continues to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the ’429 patent. Google does so knowing and intending that their customers will commit these infringing acts. Google also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the ’429 patent, thereby specifically intending for and inducing their customers to infringe the ’429 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

89. Google has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the ’429 patent.

90. Google has induced, and continue to induce, infringement of the ’429 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instruction to its customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

91. Headwater has been damaged by Google’s infringement of the ’429 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

**COUNT 6 – INFRINGEMENT OF THE ’464 PATENT**

92. Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

93. On April 23, 2024, the United States Patent and Trademark Office issued U.S. Patent No. 11,966,464, titled “Security techniques for device assisted services.” Ex. 6.

94. Headwater is the owner of the ’464 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

95. The written description of the ’464 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

96. Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the ’464 patent, and Headwater is entitled to damages for Google’s past infringement.

97. Google has directly infringed (literally and equivalently) and induced others to infringe the ’464 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the ’464 patent and by inducing others to infringe the claims of the ’464 patent without a license or permission from Headwater.

98. Exhibit 13 provides a description of the Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the ’464 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

99. Google knowingly and intentionally induces and contributes to infringement of

the ’464 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Google has had knowledge of or has been willfully blind to the ’464 patent and the infringing nature of the Accused Instrumentalities, at least because the ItsOn software included a patent marking notice which listed patents in the same family as the ’464 patent.

100. Despite this knowledge, Google continues to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the ’464 patent. Google does so knowing and intending that their customers will commit these infringing acts. Google also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the ’464 patent, thereby specifically intending for and inducing their customers to infringe the ’464 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

101. Google has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the ’464 patent.

102. Google has induced, and continue to induce, infringement of the ’464 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instruction to its customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

103. Headwater has been damaged by Google’s infringement of the ’464 patent and is

entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 7 – INFRINGEMENT OF THE '155 PATENT

104. Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

105. On May 14, 2024, the United States Patent and Trademark Office issued U.S. Patent No. 11,985,155, titled "Communications device with secure data path processing agents." Ex. 7.

106. Headwater is the owner of the '155 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

107. The written description of the '155 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

108. Headwater and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '155 patent, and Headwater is entitled to damages for Google's past infringement.

109. Google has directly infringed (literally and equivalently) and induced others to infringe the '155 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '155 patent and by inducing others to infringe the claims of the '155 patent without a license or permission from Headwater.

110. Exhibit 14 provides a description of the Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the '155 patent, which Headwater provides

without the benefit of information about the Accused Instrumentalities obtained through discovery.

111. Google knowingly and intentionally induces and contributes to infringement of the ’155 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, Google has had knowledge of or has been willfully blind to the ’155 patent and the infringing nature of the Accused Instrumentalities, at least because the ItsOn software included a patent marking notice which listed patents in the same family as the ’155 patent.

112. Despite this knowledge, Google continues to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the ’155 patent. Google does so knowing and intending that their customers will commit these infringing acts. Google also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the ’155 patent, thereby specifically intending for and inducing their customers to infringe the ’155 patent through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

113. Google has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the ’155 patent.

114. Google has induced, and continue to induce, infringement of the ’155 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instruction to its customers; providing the Accused Instrumentalities to customers; and

indemnifying patent infringement within the United States.

115. Headwater has been damaged by Google's infringement of the '155 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

**JURY DEMAND**

116. Headwater demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

**RELIEF REQUESTED**

Headwater prays for the following relief:

A. A judgment in favor of Headwater that Google has infringed the Asserted Patents, and that the Asserted Patents are valid and enforceable;

B. A judgment and order requiring Google to pay Headwater past and future damages arising out of Google's infringement of the Asserted Patents in an amount no less than a reasonable royalty, costs, expenses, and pre- and post-judgment interest, as provided under 35 U.S.C. § 284;

C. A judgment and order requiring Google to provide an accounting and to pay supplemental damages to Headwater, including, without limitation, pre-judgment and post-judgment interest;

D. A judgment that Google's infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

E. A finding that this case is exceptional under 35 U.S.C. § 285, and an award of Headwater's reasonable attorney's fees and costs; and

F. Any and all other relief to which Headwater may be entitled.

Dated: August 27, 2025

Respectfully submitted,

*/s/ Marc Fenster*
Marc Fenster

CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,**
**Headwater Research LLC**