PUBLIC VERSION

[redacted]

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>GOOGLE LLC,<br><br>*Defendant*. | Case No. 7:25-cv-00369-DC-DTG<br><br>**JURY TRIAL DEMANDED**<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT GOOGLE LLC'S MOTION TO TRANSFER VENUE TO THE <u>NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)</u>**

[redacted]

## TABLE OF CONTENTS

**Page**

I. Introduction ........ 1
II. Statement of Facts ........ 2
A. Headwater Has No Connection To WDTX And Originates In NDCA ........ 2
B. Google's Evidence And Witnesses Are Concentrated In NDCA ........ 5
C. Many Likely Third-Party Witnesses Are In Or Near NDCA ........ 6
III. Legal Standard ........ 8
IV. Argument ........ 9
A. This Case Could Have Been Filed In The NDCA ........ 9
B. The Private Interest Factors Favor Transfer ........ 9
C. The Public Interest Factors Also Favor Transfer ........ 18
V. Conclusion ........ 20

[redacted]

## TABLE OF AUTHORITIES

Page(s)

### Cases

*10Tales, Inc. v. TikTok Inc.*,
2021 WL 2043978 (W.D. Tex. May 21, 2021) .......... 20

*Adaptix, Inc. v. HTC Corp.*,
937 F. Supp. 2d 867 (E.D. Tex. Mar. 28, 2013) .......... 15

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
2018 WL 2329752 (E.D. Tex. May 23, 2018) .......... 16

*Correct Transmission LLC v. ADTRAN, Inc.*,
2021 WL 1967985 (W.D. Tex. May 17, 2021) .......... 16

*Cortex MCP, Inc. v. Visa, Inc.*,
2023 WL 11990868 (W.D. Tex. Nov. 3, 2023) .......... 19

*Cub Club Inv., LLC v. Apple, Inc.*,
2021 WL 12300180 (W.D. Tex. Sept. 7, 2021) .......... 10, 14

*DataQuill, Ltd. v. Apple Inc.*,
2014 WL 2722201 (W.D. Tex. June 13, 2014) .......... 10

*eCardless Bancorp, Ltd. v. PayPal, Inc.*,
2024 WL 6869428 (W.D. Tex. Feb. 15, 2024) .......... 11

*Google LLC v. Headwater Rsch.*, LLC,
No. 5:25-cv-7453 (N.D. Cal. Sept. 3, 2025) .......... 17

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010) .......... 12, 18

*In re Apple, Inc.*,
581 F. App'x. 886(F ed. Cir. 2014) .......... 15

*In re DISH Network L.L.C.*,
2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) .......... 15

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) .......... 2, 9, 12

*In re Google LLC*,
2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) .......... 12, 19

**PUBLIC VERSION**

[redacted]

*In re Google LLC*,
2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ........ 10, 12

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023) ........ 18

*In re Google*,
2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ........ 17

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009) ........ 19

*In re HP Inc.*,
2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ........ 16

*In re Hulu, LLC*,
2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ........ 16

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ........ 19

*In re Media Matters for Am.*,
143 F.4th 631 (5th Cir. 2025) ........ 9

*In re Nintendo Co., Ltd.*,
589 F.3d 1194 (Fed. Cir. 2009) ........ 2

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) ........ 18

*In re Volkswagen AG*,
371 F.3d 201(5th Cir. 2004) ........ 12

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ........ 9, 11, 18

*Koss Corp. v. Apple Inc.*,
2021 WL 5316453 (W.D. Tex. Apr. 22, 2021) ........ 16

*Lynk Labs, Inc. v. Home Depot USA, Inc.*,
2022 WL 1593366 (W.D. Tex. May 19, 2022) ........ 15

*Parus Holdings Inc. v. LG Elecs. Inc.*,
2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) ........ 14

*Valtrus Innovations Ltd. v. Google LLC*,
2025 WL 2076627 (N.D. Tex. July 22, 2025) ........ 14, 19

**PUBLIC VERSION**

[redacted]

*WAG Acquisition, L.L.C. v. Google LLC*,
2022 WL 9569437 (W.D. Tex. Oct. 5, 2022) .......... 14, 20

*Wet Sounds, Inc. v. Audio Formz, LLC*,
2017 WL 4547916 (W.D. Tex. Oct. 11, 2017) .......... 12

*WirelessWerx IP, LLC v. Google, LLC*,
2023 WL 11921792 (W.D. Tex. Apr. 14, 2023) .......... 16

*XR Commc'ns, LLC v. HP Inc.*,
2022 WL 3448746 (W.D. Tex. Aug. 17, 2022) .......... 17

**Other Authorities**

28 U.S.C. § 1404(a) .......... 1, 8, 9

Fed. R. Civ. P. 45(c)(1)(B) .......... 15

PUBLIC VERSION

[redacted]

## TABLE OF EXHIBITS

| | |
|---|---|
| Ex. 1 | U.S. Patent No. 8,639,935 |
| Ex. 2 | U.S. Patent No. 9,973,930 |
| Ex. 3 | U.S. Patent No. 11,405,429 |
| Ex. 4 | U.S. Patent No. 9,609,510 |
| Ex. 5 | U.S. Patent No. 11,096,055 |
| Ex. 6 | Complaint for *Headwater Research LLC v. Motorola Mobility LLC et al.*, 4:23-cv-04496-KAW, Dkt. 1 (N.D. Cal. Aug. 30, 2023) |
| Ex. 7 | Evidentiary Hearing Transcript, *Headwater Research LLC v. Samsung Electronics America, Inc., et al.*, 2:23-cv-00103-JRG-RSP, Dkt. 338 (E.D. Tex.) |
| Ex. 8 | Headwater Partners II LLC, Application to Register a Foreign Limited Liability Company, California SOS (Oct. 20, 2011) |
| Ex. 9 | ItsOn Inc., Statement and Designation by Foreign Corporation, California SOS (Oct. 14, 2008) |
| Ex. 10 | Headwater Partners I LLC, Limited Liability Company Application for Registration, California SOS (Oct. 14, 2008) |
| Ex. 11 | U.S. Patent No. 11,985,155 |
| Ex. 12 | U.S. Patent No. 11,966,464 |
| Ex. 13 | Defendant's Motion to Dismiss for Lack of Standing, *Headwater Research LLC v. Samsung Electronics America, Inc., et al.*, 2:22-cv-00422-JRG-RSP, Dkt. 274 (E.D. Tex. May 28, 2024) |
| Ex. 14 | Gregory Raleigh, Lexis SmartLinx Person Report (Limited) (Aug. 26, 2025) |
| Ex. 15 | Clarity Wireless Inc., Articles of Incorporation (Dec. 18, 1996) |
| Ex. 16 | *Cisco Systems to Acquire Clarity Wireless Corporation*, CISCO (Sept. 15, 1998) |
| Ex. 17 | Woodside Networks, Inc., Statement and Designation by Foreign Corporation, California SOS (Nov. 30, 2000) |

[redacted]

| | |
|---|---|
| Ex. 18 | Airgo Networks, Inc., Amended Statement and Designation by Foreign Corporation, California SOS (Aug. 6, 2002) |
| Ex. 19 | Dave Boyce, *Does Woodside Town Hall Make It Too Difficult To Build Or Remodel?*, THE ALMANAC (Sept. 11, 2015) |
| Ex. 20 | *Our Story From the Garage to the Googleplex*, GOOGLE |
| Ex. 21 | *Our Locations*, GOOGLE |
| Ex. 22 | Dilip Patel, *History of Android*, ANDROID MASTERY |
| Ex. 23 | Samsung's First Amended Answer and Defenses to Headwater's Complaint for Patent Infringement, *Headwater Rsch. LLC v. Samsung Elecs. Co. Ltd.*, No. 2:23-cv-641-JRG-RSP, Dkt. 58 (E.D. Tex. Jan. 17, 2025) |
| Ex. 24 | Dan Meyer, *Sprint taps ItsOn for virtualized PCC*, RCR WIRELESS |
| Ex. 25 | Charles Giancarlo, Lexis SmartLinx Person Report (Limited) (Aug. 27, 2025) |
| Ex. 26 | Sinead Carew, *Andreessen Horowitz Leads $15.5 Million Funding of ItsOn Mobile Firm*, REUTERS (Oct. 30, 2012) |
| Ex. 27 | Krista Jacobsen, Lexis SmartLinx Person Report (Limited) (Aug. 27, 2025) |
| Ex. 28 | "Contact" webpage, Jacobsen IP Law |
| Ex. 29 | Minutes for Jury Trial Day No. 3, *Headwater Rsch. LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-422-JRG-RSP, Dkt. 491 (E.D. Tex. Jan. 15, 2025) |
| Ex. 30 | Cory Modlin, Lexis SmartLinx Person Report (Limited) (Aug. 27, 2025) |
| Ex. 31 | Defendants' Response In Opposition to Plaintiff's Omnibus Motions *In Limine*, *Headwater Rsch. LLC v. Samsung Elecs. Am., Inc.*, 2:23-cv-103-JRG-RSP, Dkt. 286 (E.D. Tex. Dec. 9, 2024) |
| Ex. 32 | Samsung's Fourth Supplemental Initial Disclosures, *Headwater Rsch. LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-103-JRG-RSP, Dkt. 336-4 (Feb. 21, 2025) |
| Ex. 33 | Excerpted Trial Transcript (Vol. 4), *Headwater Rsch., LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-103-JRG-RSP (E.D. Tex. Apr. 24, 2025) |
| Ex. 34 | 61/206,354 Provisional Patent Application |

[redacted]

| | |
|---|---|
| Ex. 35 | Michael Schallop biography, Van Pelt, Yi & James LLP |
| Ex. 36 | 61/785,988 Provisional Patent Application |
| Ex. 37 | Complaint, *Headwater Rsch. LLC v. Samsung Elecs. Am., Inc.*, 2:22-cv-422-JRG-RSP, Dkt. 1 (E.D. Tex. Oct. 26, 2022) |
| Ex. 38 | Memorandum Order, *Headwater Rsch. LLC v. Samsung Elecs. Co., Ltd.*, 2:22-cv-422-JRG-RSP, Dkt. 401 (E.D. Tex. Aug. 2, 2024) |
| Ex. 39 | ItsOn-ABC LLC, Articles of Organization, California SOS (Dec. 28, 2017) |
| Ex. 40 | Sherwood Partners, Inc., Articles of Incorporation with Statement of Conversion, California SOS (Feb. 7, 2014) |
| Ex. 41 | Qualcomm Global Office Locations webpage |
| Ex. 42 | *Where is T Mobile's Headquarters? Main Office Location and Global Offices*, CLAY |
| Ex. 43 | "Contact Us" webpage, InterDigital |
| Ex. 44 | Memorandum Order, *Headwater Rsch. LLC v. AT&T Inc.*, No. 2:23-cv-397-JRG-RSP, Dkt. 255 (E.D. Tex. July 25, 2025) |
| Ex. 45 | Google LLC, Statement of Information, California SOS (Sept. 7, 2023) |
| Ex. 46 | Driving Directions from Midland, TX to Tyler, TX, Google Maps |
| Ex. 47 | Driving Directions from Midland, TX to [redacted], Google Maps |
| Ex. 48 | Driving Directions from San Francisco, CA to [redacted], Google Maps |
| Ex. 49 | David Wise Deposition Transcript, *Headwater Rsch. LLC v. Samsung Elecs. Co., Ltd.*, Case No. 2:23-cv-103-JRG-RSP, Dkt. 320-2 (E.D. Tex. Feb. 7, 2025) |
| Ex. 50 | Defendants' Motion for Summary Judgment, *Headwater Rsch. LLC v. Samsung Elecs. Co., Ltd.*, 2:22-cv-422-JRG-RSP, Dkt. 273 (E.D. Tex. May 28, 2024) |
| Ex. 51 | Defendants' Opposition to Motion to Quash Subpoena & Motion to Transfer, *In re Subpoena to Krista Jacobsen*, 2:25-mc-4-JRG-RSP, Dkt. 8 (E.D. Tex. May 21, 2025) |

PUBLIC VERSION

[redacted]

| | |
|---|---|
| Ex. 52 | Memorandum Opinion & Order Granting Defendant's Motion to Transfer Venue, *L2 Mobile Techs. LLC v. Google LLC*, 6:21-cv-358-ADA, Dkt. 52 (W.D. Tex. Jan. 7, 2022) |
| Ex. 53 | Open Patent Cases in WDTX and NDCA, Lex Machina |
| Ex. 54 | Time to Trial in WDTX, DocketNavigator |
| Ex. 55 | Time to Trial in NDCA, DocketNavigator |
| Ex. 56 | Kolotouros's and Samsung's Opposition to Headwater's Motion to Compel Compliance with Deposition Subpoena, *In re Kolotouros*, 5:24-mc-80255-SVK, Dkt. 7 (N.D. Cal. Oct. 30, 2024) |
| Ex. 57 | '935 Filing Application |
| Ex. 58 | '930 Filing Application |
| Ex. 59 | '429 Filing Application |
| Ex. 60 | '510 Filing Application |
| Ex. 61 | '055 Filing Application |
| Ex. 62 | *Samsung Electronics Co., Ltd. v. Headwater Research LLC*, IPR2025-00483, Paper No. 6 (P.T.A.B. June 16, 2025) |
| Ex. 63 | *Samsung Electronics Co., Ltd.et al. v. Headwater Research LLC*, No. IPR2025-00484, Paper 6 (P.T.A.B. June 16, 2025) |
| Ex. 64 | *Samsung Electronics Co., Ltd. et al. v. Headwater Research LLC*, No. IPR2025-00481, Paper 5 (P.T.A.B. June 18, 2025) |
| Ex. 65 | *Samsung Electronics Co., Ltd. et al. v. Headwater Research LLC*, No. IPR2025-00482, Paper 4 (P.T.A.B. February 4, 2025) |
| Ex. 66 | Jonathan Kagan biography, Irell & Manella LLP |

[redacted]

## I. INTRODUCTION

Google LLC ("Google") respectfully requests transfer to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a) because NDCA is clearly the more convenient forum for this lawsuit. Plaintiff Headwater Research LLC ("Headwater") has no ties to the Western District of Texas ("WDTX") and instead has roots in Northern California. Indeed, Headwater's founder and a named inventor on all asserted patents, Dr. Gregory Raleigh, listed Woodside, California in NDCA as his residence when filing most of the asserted patents. *See* Exs. 1-5, 57-61. During the time he allegedly conceived of Headwater's inventions, Dr. Raleigh was working in NDCA at Headwater Partners I LLC—the predecessor entity from which Headwater was born—and its sister company ItsOn; companies he founded in NDCA.[1] Even now, Dr. Raleigh resides much closer to NDCA in a town less than five miles from California. Further, most of the other named inventors similarly listed cities in NDCA as their residences when filing the asserted patents. Headwater has also chosen to avail itself of NDCA in a prior patent litigation. *See, e.g.*, Ex. 6.

Headwater's infringement allegations center on Google's eSIM-related functionalities, including for use with the Google Fi network ("accused functionalities"). Google's witnesses related to Headwater's allegations are primarily located in NDCA, not WDTX. Google's headquarters have been in NDCA since its founding. Google's eSIM-related functionalities, including for use with the Google Fi network, were primarily developed by engineers in Google's NDCA offices. Thus, Google's key employees, including those with technical knowledge of the accused functionalities, are primarily in NDCA. No relevant Google employees with responsibilities related to the accused functionalities are based in WDTX. Although Headwater has filed several other cases against Google in WDTX, those cases are all in their early stages. In

[1] Headwater relocated to the Eastern District of Texas ("EDTX") prior to commencing patent litigation.

[redacted]

each, Google has moved—or will move—to transfer the case to NDCA because the accused functionalities were developed there and there are no meaningful connections to Texas.

NDCA is also more convenient for relevant third parties. ItsOn-ABC, the company that retains the electronically stored information ("ESI") of ItsOn—which allegedly implemented and productized Headwater's patented technology—appears to be in NDCA. *See* Section II.C, *infra*. Many former Headwater and ItsOn employees also apparently remain in NDCA, including Charles Giancarlo (ItsOn co-founder), Krista Jacobsen (Headwater Head Counsel), Cory Modlin (Headwater Technical Advisor), and James Fitzgerald (ItsOn manager of the Android development team). *See id.* These and other third parties in or near NDCA may have information relevant to Google's invalidity, estoppel, disclaimer, waiver, marking, and prosecution history estoppel defenses. Google is unaware of any relevant third parties located in WDTX.

For all these witnesses, NDCA is more convenient than WDTX. The same is true for others who do not reside in either venue as traveling to NDCA would be easier given the greater availability of flights to the San Francisco Bay Area. Where "the transferee venue is clearly more convenient than the venue chosen by the plaintiff," the case should be transferred. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009)).[2] Accordingly, Google respectfully requests that the Court transfer this case to NDCA.

## II. STATEMENT OF FACTS

### A. Headwater Has No Connection To WDTX And Originates In NDCA

Headwater has no presence in this District and originates in NDCA. The Complaint states that, "[i]n 2008, Dr. Raleigh formed Headwater"—referring to Headwater Partners I LLC, the

[2] All internal citations or quotations omitted and emphases added unless noted otherwise.

[redacted]

predecessor entity from which Plaintiff Headwater was created. ECF No. 1 ("Compl.") ¶ 11; *see* Ex. 7 at 12:18-13:3; Ex. 8. Dr. Raleigh simultaneously founded Headwater's sister company, ItsOn, Inc. ("ItsOn") to "license and productize Headwater's patented technology." Ex. 7 at 25:18-23. He merged Headwater Partners I LLC with Headwater Management LLC (another company he founded) to form Headwater, the Plaintiff, in 2011. *Id.* at 12:18-13:3; Compl. ¶ 17. Headwater Partners I LLC, Headwater Management LLC, and ItsOn were all originally headquartered in NDCA.[3] Exs. 8-10.

The asserted patents also have strong ties to NDCA. Six of the seven asserted patents list at least one inventor residing in NDCA at the time of filing. Exs. 1-5, 11; *see also* Exs. 57-61. The remaining patent lists Dr. Raleigh as the sole inventor and as residing in Incline Village, NV (Ex. 12)—even though he listed Woodside, CA, as his residence on five of the other asserted patents in this case (Exs. 1-5).[4] Three of the asserted patents list co-inventors located in NDCA: two list James Lavine as an inventor residing in Corte Madera, CA; one lists Alireza Raissinia as an inventor residing in Monte Sereno, CA and Michael J. Sabin as an inventor residing in Sunnyvale, CA; and one lists Jeffrey Green as an inventor residing in Sunnyvale, CA.[5] Exs. 2, 4, 11.

In addition, all of the asserted patents claim priority to one or more of at least eighteen non-provisional and thirty provisional applications that list Dr. Raleigh as the (co-)inventor and residing in Woodside, CA. Declaration of Lucas Lonergan ("Lonergan Decl.") ¶ 15. James Lavine

---

[3] Headwater Partners II LLC, another related Headwater entity founded by Dr. Raleigh in 2011, was also originally headquartered in the San Francisco Bay Area in NDCA. Ex. 8.

[4] The remaining two asserted patents list Dr. Raleigh as an inventor residing in Incline Village, NV. Exs. 11, 12.

[5] Woodside, CA, Corte Madera, CA, Monte Sereno, CA, and Sunnyvale, CA are all located in NDCA.

[redacted]

is also listed as an inventor residing in Mill Valley, CA, Corte Madera, CA, or Marin, CA in at least eleven of those applications; Alireza Raissinia is listed as an inventor residing in Monte Sereno, CA in at least nine of those applications; Michael J. Sabin is listed as an inventor residing in Sunnyvale, CA in at least five of those applications; Jeffrey Green is listed as an inventor residing in Sunnyvale, CA in at least three of those applications; Vladislav Kudelin is listed as an inventor residing in Los Altos, CA in at least three of those applications; and Rob Rightmeyer is listed as an inventor residing in Santa Clara, CA in at least two of those applications. *Id.* ¶¶ 16-21. In all the asserted patents—and the non-provisional and provisional applications to which they claim priority—no inventors are listed as residing in Texas. Thirty-three of those applications were prosecuted by Van Pelt, Yi & James LLP, based in Cupertino, CA at the time of filing (now based in Los Altos) and/or by Sheppard, Mullin, Richter & Hampton LLP in Palo Alto, CA. *Id.* ¶¶ 22.

Headwater's connection to NDCA was further confirmed at an evidentiary hearing on whether Headwater had standing to assert another Headwater patent in a prior case against Samsung. Ex. 7 at 13:6-15. There, Dr. Raleigh testified that he conceived of "many of Headwater's inventions" during a collaboration between ItsOn (headquartered in ***NDCA***) and Best Buy—allegedly after he departed from Qualcomm.[6] *Id.* at 16:13-19:2.

Finally, although Headwater purports to maintain an office in Tyler, Texas (in EDTX), Dr. Raleigh resides in, and likely operates Headwater from, [redacted] Ex. 14. Dr. Raleigh has numerous other ties to NDCA. For example, the Complaint

[6] Contradictorily, Dr. Raleigh admitted during a public interview that he conceived of the inventions that led to the creation of Headwater "[a]t Qualcomm" and "took it to the then CEO of Qualcomm" during his employment. Ex. 13 at 3. If true, Headwater lacks standing to assert the patents given the terms of Dr. Raleigh's patent assignment agreement with Qualcomm. *Id.* at 1-2.

[redacted]

describes:

- Dr. Raleigh's time working at Stanford, located in NDCA (Compl. ¶ 5);
- Dr. Raleigh's co-founding of Clarity Wireless in Mountain View, CA, located in NDCA (*Id.* ¶ 7; Ex. 15);
- Clarity Wireless's acquisition by Cisco (Compl. ¶ 7) where the team was relocated to San Jose, CA, located in NDCA (Ex. 16); and
- Dr. Raleigh's co-founding of Airgo Networks, Inc. (f/k/a Woodside Networks, Inc.) with a principal place of business in Redwood City, CA, in NDCA (Compl. ¶ 8; Exs. 17, 18).

Dr. Raleigh also appears to own property in NDCA, as public records indicate that he was a longtime resident of Woodside, CA. *See* Exs. 14, 19.

### B. Google's Evidence And Witnesses Are Concentrated In NDCA

Google is headquartered in Mountain View, CA, with several other offices in the San Francisco Bay Area in NDCA. Exs. 20, 21. Headwater's infringement allegations are focused on Google's eSIM-related functionalities, including for use with the Google Fi network. These eSIM-related functionalities allow eSIM-enabled devices, such as Google Pixel phones, to connect to cellular networks. Declaration of Grace Chen ("Chen Decl.") ¶ 3. One such network is Google Fi, a Mobile Virtual Network Operator that provides wireless service for mobile devices. *Id.*

Today, Ms. Grace Chen leads the PMW-SIM, Pixel Mobile Wireless SIM/eSIM/SE, team. *Id.* Ms. Chen is based out of Google's [redacted] and has been involved in the development of Google eSIM-related functionalities, including for use with Google Fi. *Id.* ¶¶ 2-3. She leads a team of [redacted] of whom are direct reports. *Id.* ¶ 3. [redacted] of those people are based in Google's [redacted] *Id.* Of the [redacted] employees who work remotely or reside outside of California, [redacted] are based out of [redacted] and [redacted] is based out of [redacted]. *Id.* None reside in WDTX.

Several other Google employees have potentially relevant experience and/or institutional

knowledge regarding the accused functionalities and are based out of Google's [redacted] *Id.* ¶ 4. Chen Xu is the technical lead for the Android eSIM team and is based out of Google's [redacted]. *Id.* Alex Zheng, who leads product for the Google Fi Wireless team, is also based out of Google's [redacted]. *Id.* Tim Auer is a staff engineer on the Core Product Telephony team for Google Fi and is responsible for eSIM-related data used by Google Fi devices; he too is based out of Google's [redacted] *Id.* And Ji Yang, who manages the Google Fi Core Products and Services team, is also based out of Google's [redacted]; Mr. Yang's team's responsibilities include working on eSIM-related functionalities for use with Google Fi. *Id.* Likewise, Sarika Mittal, the technical program manager for the Android Telephony team who works on eSIM-related features on Pixel phones, is based out of Google's [redacted]. *Id.* Moreover, Google engineers with knowledge about potential prior art are also based out of Google's [redacted] This includes Robert Greenwalt, who was one of the early developers working on the Android Telephony stack in 2009, including its use of SIM-related technology. *Id.*

Because documents about the accused functionalities, including technical documents and source code, are created and maintained by employees working on those functionalities, such documents for Google's eSIM-related technologies and Google Fi are primarily created and maintained in NDCA. *Id.* ¶ 5.

### C. Many Likely Third-Party Witnesses Are In Or Near NDCA

Although Google's investigation is in its early stages, numerous third-party witnesses and/or entities with knowledge likely relevant to Google's defenses appear to be in NDCA. Google's eSIM-related functionalities, including for use with the Google Fi network, run on or work in conjunction with Android mobile phones. For example, an Android mobile phone can interact with the Google Fi network when performing eSIM-related functionalities. Android Inc.

[redacted]

was founded in Palo Alto, CA, and later acquired by Google. Ex. 22 at 2. Long before this case, Dr. Raleigh apparently was well aware of Android's capabilities and, in his role as ItsOn's CEO and while the company was based in NDCA, hired a team of Android software engineers to develop a product that used Android. Ex. 23 at 24 (describing Dr. Raleigh's extensive experience and familiarity with Android and its features); *see also* Ex. 24 (In 2014, Sprint "announced a deal to use ItsOn's Smart Services Platform to allow for the deployment of new network and mobile services" to "design and implement granular service policy control for data, messaging and voice services" on "all new Sprint smartphones running Google's Android operating system.").

Many former Headwater and ItsOn employees appear to still be in NDCA:

- Charles Giancarlo, ItsOn co-founder, appears to be located in [redacted]. *See* Exs. 25, 26.
- Krista Jacobsen, Headwater's Head Counsel from 2011 to 2014, appears to be located in [redacted] (or potentially [redacted] but not Texas). *See* Exs. 27, 28. Ms. Jacobsen testified by deposition at trial in a prior patent infringement suit Headwater brought against Samsung. *See* Ex. 29.
- Cory Modlin, a former Technical Advisor at Headwater, appears to be located in [redacted] *See* Exs. 30, 31 at 3.
- James Fitzgerald, an employee of ItsOn and its manager of the Android development team, appears to be located in [redacted] *See* Ex. 32. Mr. Fitzgerald testified by deposition at trial in two prior patent infringement suits Headwater brought against Samsung. *See* Exs. 29, 33.

These and other former Headwater and ItsOn employees have information potentially relevant to Google's invalidity, estoppel, disclaimer, waiver, marking, and prosecution history estoppel defenses based on ItsOn's and Dr. Raleigh's apparent knowledge of Android and its eSIM-related functionalities. In addition, the law firm that Headwater hired to prosecute the earliest patent application to which six of the asserted patents claim priority, and Michael Schallop, the prosecuting attorney for that application, who may have information and documents regarding Google's standing defense, are in NDCA. *See* Exs. 34, 35. And Krista Jacobsen, who signed the

[redacted]

earliest patent application to which the remaining asserted patent claims priority, appears to be located in [redacted] (or potentially [redacted]. *See* Exs. 27, 28, 36. Likewise, Jonathan Kagan, the attorney who executed Headwater's Power of Attorney in Samsung's IPRs on related Headwater patents including three of the asserted patents, appears to be located in [redacted] *See* Exs. 62-66.

Headwater alleges ItsOn "implement[ed] Headwater's patented technologies." Ex. 37 ¶¶ 20, 26, 34; *see also id.* ¶¶ 14, 16-39; Ex. 7 at 25:18-23. Thus, ItsOn's ESI—including source code and technical assets—that could further support Google's defenses is also in NDCA. ItsOn filed for bankruptcy, and its assets were liquidated into an "Assignment for Benefit of Creditors" entity ("ItsOn-ABC"), managed by Sherwood Partners. Ex. 38 at 1-2. Headwater confirmed these assets still exist in ItsOn-ABC's possession. *Id.* ItsOn-ABC and Sherwood Partners are based in Mountain View, CA and Santa Clara, CA, respectively. Exs. 39, 40.

Other third parties with relevant information are located in or closer to NDCA than WDTX. Southern California-based Qualcomm (Ex. 41), Dr. Raleigh's former employer, may have information relevant to Google's standing and invalidity defenses.[7] T-Mobile US, Inc. ("T-Mobile"), which provides the underlying cell coverage for Google Fi in the United States, is based in Bellevue, WA. Ex. 42. And Interdigital Inc.—a company with offices in NDCA but not Texas (Ex. 43)—may also have information potentially relevant to damages in this action (if any) given its recent efforts to acquire the Headwater patents (Ex. 44).

## III. LEGAL STANDARD

A court may transfer a case "[f]or the convenience of parties and witnesses." 28 U.S.C. §

[7] Headwater itself mentions Qualcomm five times in the Complaint: according to Headwater, "Dr. Raleigh's innovations at … Qualcomm, resulted in widespread adoption of his technologies …." Compl. ¶ 9; *see also id.* at ¶¶ 8-10.

[redacted]

1404(a). It first considers "whether a civil action might have been brought in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("Volkswagen II"). If so, courts weigh eight factors to determine if "good cause" exists for transfer:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; … (4) all other practical problems that make trial of a case easy, expeditious and inexpensive[,] … [(5)] the administrative difficulties flowing from court congestion; [(6)] the local interest in having localized interests decided at home; [(7)] the familiarity of the forum with the law that will govern the case; and [(8)] the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* at 315. "Good cause" is established if a movant shows "(1) that the marginal gain in convenience will be significant, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will actually materialize in the transferee venue." *In re Media Matters for Am.*, 143 F.4th 631, 638 (5th Cir. 2025).

## IV. ARGUMENT

### A. This Case Could Have Been Filed In The NDCA

The threshold transfer requirement is met since Google is headquartered in NDCA at 1600 Amphitheatre Parkway, Mountain View, CA. *See* 28 U.S.C. § 1404(a); Exs. 21, 45.

### B. The Private Interest Factors Favor Transfer

#### (1) Cost Of Attendance For Willing Witnesses Favors Transfer

"The convenience of the witnesses is probably the single most important factor in [the] transfer analysis." *Genentech, Inc.*, 566 F.3d at 1343. Given that the vast majority of witnesses are either based in NDCA or located near California, and no known witness is based in WDTX, this factor strongly favors transfer.

Google's headquarters have been in NDCA since its founding. Exs. 20, 21. Google's key employees, including those with technical knowledge of the accused functionalities, are primarily

[redacted]

in NDCA. Chen Decl. ¶¶ 2-4. Ms. Chen, the team lead of the PMW-SIM, Pixel Mobile Wireless SIM/eSIM/SE team, works on eSIM-related functionalities for Pixel devices, resides in [redacted], and works from Google's [redacted]. *Id.* ¶¶ 2-3. Additionally, [redacted] of Ms. Chen's [redacted] team reside in [redacted] *Id.* ¶ 3. And key employees, including engineers and product managers, who work on the accused functionalities and potential prior art products are also in Google's [redacted], not Texas. *Id.* ¶ 4. All of these key employees have direct experience with developing and/or managing the accused functionalities and/or prior art, which is relevant to noninfringement, state of the art, and invalidity.

Although Google has an Austin office, no employees responsible for the design or development of the accused functionalities are based there. *Id.* ¶ 4. A party's mere presence in the transferor district does not affect this factor if that presence is not relevant to the case. *See, e.g.*, *In re Google LLC*, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021) (finding that the district court correctly weighed factor in favor of transfer even where Google had employees in Austin, because employees with knowledge relating to case were mainly in NDCA and none were in Texas). Indeed, courts in this District have granted transfer notwithstanding a defendant's Austin office where "there [was] no evidence … demonstrat[ing] a single employee from the Austin campus ha[d] knowledge and/or documents relevant to [the] case." *Cub Club Inv., LLC v. Apple, Inc.*, 2021 WL 12300180, at *4 (W.D. Tex. Sept. 7, 2021); *see also DataQuill, Ltd. v. Apple Inc.*, 2014 WL 2722201, at *1, *3 (W.D. Tex. June 13, 2014) (transferring to NDCA despite defendant "employ[ing] some 3,500 people" in this District where no witnesses were identified in WDTX). Accordingly, Google's office in Austin is irrelevant to this case and does not affect the transfer analysis. Moreover, Google's Austin office is "over 300 miles away from the Midland Division," which "***favors*** transfer." *eCardless Bancorp, Ltd. v. PayPal, Inc.*, 2024 WL 6869428,

[redacted]

at *2–3 (W.D. Tex. Feb. 15, 2024) (transferring case to NDCA where defendant "ha[d] 1,022 individuals in this District and Texas" and plaintiff was "unable to identify any willing witnesses within 100 miles of the Midland courthouse").

Litigating this case in NDCA also appears more convenient for Headwater, which does not have a presence in WDTX. Indeed, Headwater previously chose to initiate patent litigation in NDCA against another defendant.[8] *See* Ex. 6. While Headwater claims to have an office in Texas, it is in Tyler (in EDTX)—over 400 miles away from this Court's Midland division. Ex. 46. Further, Dr. Raleigh currently resides in, and likely operates Headwater from, [redacted] Ex. 14. While [redacted] is over 1,400 miles from Midland (Ex. 47), it is only about 200 miles from (and via the airport in [redacted] a short direct flight to) the San Francisco Bay Area (Ex. 48). Dr. Raleigh also has substantial past and present ties to California. Headwater and its sister company ItsOn were founded by Dr. Raleigh and originally headquartered in Redwood City in NDCA. *See supra* Section II.A. [redacted]. Exs. 14, 19. And the Complaint describes Dr. Raleigh's extensive work in NDCA, including at Stanford, Clarity Wireless, and Airgo Networks. Compl. ¶¶ 5, 7-9.

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317. "[I]t is an obvious conclusion that it is more convenient for witnesses to testify at home[.]" *Id.* Distant witnesses "not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *Id.* Here, the time and the distance witnesses would need to

[8] While the asserted patents here may be unrelated to the patents asserted in *Headwater v. Motorola*, Headwater's complaints are similar. *Compare* Compl. ¶¶ 3-16, *with*, Ex. 6 ¶¶ 2-15.

[redacted]

travel favor transfer. A majority of Google and Headwater witnesses would need to travel about 1,500 miles from California (or farther) to Midland to testify, resulting in costly and unnecessary travel expenses and personal and professional disruptions. *See Wet Sounds, Inc. v. Audio Formz, LLC*, 2017 WL 4547916, at *3 (W.D. Tex. Oct. 11, 2017) ("[S]cheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.") (quoting *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004)); *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) ("[T]he combination of multiple parties being headquartered in or near the transferee venue and no party or witness in the plaintiffs chosen forum is an important consideration").

Because most material witnesses reside in or are closer to NDCA, and no known witnesses reside in WDTX, this most important factor overwhelmingly favors transfer. *In re Google LLC*, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) ("[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer"). The Federal Circuit recently noted that this factor favored transfer where, like here, "the Northern District of California would be more convenient for Google employees knowledgeable about the design and development of the accused functionalities as well as [the plaintiff's] founder and CFO." *In re Google LLC*, 2021 WL 5292267, at *2. The same result is warranted here.

**(2) The Relative Ease Of Access To Sources Of Proof Favors Transfer**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345 (factor favored transfer based on defendant's evidence). Documents about the accused functionalities are primarily created and maintained by

[redacted]

the employees who designed, developed, managed, and worked on those functionalities in Google's NDCA offices. *See* Chen Decl. ¶ 5. Thus, relevant documents and source code regarding the accused functionalities are primarily created and maintained in NDCA.

As for evidence relating to Headwater, it has previously confirmed that ItsOn-ABC—which is managed by Sherwood Partners—possesses ItsOn's ESI. *See supra* Section II.C. ItsOn-ABC and Sherwood Partners are both located in NDCA. *Id.* Accordingly, documents relating to ItsOn, the company founded to "license and productize Headwater's patented technology," are also located in NDCA. Ex. 7 at 25:18-23.

Furthermore, several third-party witnesses who are former ItsOn and Headwater employees and likely have relevant evidence appear to be in NDCA:

- Dr. Raleigh has stated that Mr. Giancarlo ([redacted]) worked with him on his inventions. Ex. 49 at 25:17-22.
- Deposition testimony of Mr. Fitzgerald ([redacted]) was played at the trial of another Headwater case regarding ItsOn, its technology, and its relationship with Headwater. Ex. 33 at 1054:23-1056:14. Mr. Fitzgerald testified that most of the software engineering he did during his time at ItsOn had to do with Android. *Id.* Mr. Fitzgerald may also be relevant to Google's marking defense. *See* Ex. 50 at 6.
- Ms. Jacobsen ([redacted] was a prosecution attorney for U.S. Provisional Patent Application No. 61/785,988, which is the only patent application to which the '510 patent claims priority. Ms. Jacobsen is also listed as the attorney on the face of the '935 patent. Ex. 1 at Cover. Ms. Jacobsen may also be relevant to Google's standing defense.
- Mr. Modlin ([redacted]) possesses salient evidence to support Google's defenses, including inequitable conduct before the Patent Office.[9] Ex. 31 at 3-5 (arguing that testimony from Mr. Modlin about Headwater's evaluation of prior art was relevant to inequitable conduct and secondary considerations of obviousness); Ex. 51 at 5 (Mr. Modlin testified that "Dr. Raleigh was not receptive to prior art searches and would reprimand at least one employee for finding prior art").

---

[9] Google is investigating whether there is a factual basis to plead an inequitable conduct defense and intends to serve discovery on the issue.

[redacted]

Third parties Qualcomm (San Diego, CA), T-Mobile (Bellevue, WA), and Interdigital (San Francisco Bay Area, CA) also likely have additional evidence. In addition, Mr. Kagan ([redacted], who executed Headwater's Power of Attorney in IPRs on three of the asserted patents, may have relevant evidence. Exs. 62-65. In contrast, there is no indication that any relevant evidence was created or is maintained in WDTX. *See* Exs. 41-44. Under these factors, transfer is strongly favored. *WAG Acquisition, L.L.C. v. Google LLC*, 2022 WL 9569437, at *4 (W.D. Tex. Oct. 5, 2022) (factor favored transfer where "[m]ore sources of proof likely reside in, and are likely more easily accessed in, the NDCA than the WDTX[,] Google headquarters are located in the NDCA[,] … Google has identified custodians of the key documents in the NDCA[,] … [and] [plaintiff] has not pointed to any evidence that is more easily accessible in the WDTX."); Ex. 52 at 7-10 (third-party source code located in Los Angeles favored transfer to NDCA).

Although documents may be stored electronically, the "location of document custodians and the location where documents are created and maintained … may bear on the ease of retrieval." *Valtrus Innovations Ltd. v. Google LLC*, 2025 WL 2076627, at *4 (N.D. Tex. July 22, 2025). Since California is where the key custodians are located and the geographic locus of evidence, this factor favors transfer to NDCA. *See Parus Holdings Inc. v. LG Elecs. Inc.*, 2020 WL 4905809, at *3 (W.D. Tex. Aug. 20, 2020) (finding "the location of the documents favors transfer" to NDCA where "Google researches, designs, develops, and tests Google assistant in NDCA"); *Cub Club Inv.*, 2021 WL 12300180, at *4 (finding this factor favored transfer because "Apple resides in the NDCA" and "the accused features were apparently developed at Apple's offices in California").

**(3) The Availability Of Compulsory Process To Secure The Attendance Of Witnesses Favors Transfer**

"Transfer is favored" where, as here, the transferee district "has absolute subpoena power over a greater number of non-party witnesses" whose attendance may require a court order.

[redacted]

*Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. Mar. 28, 2013). When there is no indication that the non-party witnesses are willing to appear absent compulsory process, a court must presume that compulsory process will be required. *See In re DISH Network L.L.C.*, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021). Because there are "more third-party witnesses resid[ing] within the transferee venue than resid[ing] in the transferor venue," this factor "weigh[s] heavily in favor of transfer." *In re Apple, Inc.*, 581 F. App'x. 886, 889 (Fed. Cir. 2014).

There are several potential third-party witnesses in NDCA and none in WDTX. For example, several likely third-party witnesses such as ItsOn co-founder Charles Giancarlo, ItsOn manager of the Android development team James Fitzgerald, Headwater former Head Counsel Krista Jacobsen, and Headwater Technical Advisor Cory Modlin all appear to be in NDCA. *See supra* Section II.C. Jonathan Kagan, who executed Headwater's Power of Attorney in Samsung's IPRs on three of the asserted patents, also appears to be in [redacted] *See* Ex. 66. And to the extent individuals from Qualcomm or Interdigital are in California—which is likely given they are based and/or have offices there—they would be subject to NDCA's subpoena power. *See* Fed. R. Civ. P. 45(c)(1)(B).

Prior case records indicate it is likely many witnesses would be unwilling to testify in WDTX.[10] For example, Mr. Fitzgerald and Ms. Jacobsen appeared at trial by deposition rather than in person in EDTX. *See* Exs. 29, 33. Mr. Modlin testified at deposition that he had negative views of Headwater. Ex. 31 at 3; *see also Lynk Labs, Inc. v. Home Depot USA, Inc.*, 2022 WL 1593366, at *6 (W.D. Tex. May 19, 2022) ("[G]iven her status as a former employee, the Court will treat Ms. Kramer as an unwilling witness whose testimony the [transferee forum], but not this

[10] To the extent this Court finds that any of these individuals are willing witnesses, NDCA would still be more convenient for them than WDTX, supporting transfer under the first factor.

[redacted]

District, can compel."); *cf. Koss Corp. v. Apple Inc.*, 2021 WL 5316453, at *7 (W.D. Tex. Apr. 22, 2021) (noting a third-party working for plaintiff's competitor would be "unlikely to willingly testify"). As for other non-party witnesses, there is no indication they would be willing to attend trial in WDTX; thus, they are "presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018) (citing *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, 2018 WL 2329752, at *6 (E.D. Tex. May 23, 2018)).

As several likely third-party witnesses are in or could be compelled to NDCA and none are known to reside within WDTX's subpoena power, this factor favors transfer. *See In re Hulu, LLC*, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021) ("[W]e think that the Fifth Circuit would recognize that where, as here, the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."); *WirelessWerx IP, LLC v. Google, LLC*, 2023 WL 11921792, at *3 (W.D. Tex. Apr. 14, 2023) ("Because the Northern District of California has subpoena power over at least eight more third-party witnesses than this Court, the factor weighs in favor of transfer.").

**(4) The Practical Problems That Make Trial Of A Case Easy, Expeditious, And Inexpensive Favor Transfer**

Courts have "previously held that the last private interest factor favors transfer when most witnesses are present in the transferee forum and the plaintiff has no presence in the Western District." *Correct Transmission LLC v. ADTRAN, Inc.*, 2021 WL 1967985, at *5 (W.D. Tex. May 17, 2021). As discussed, Google's anticipated witnesses are in NDCA given that Ms. Chen, Ms. Xu, Mr. Zheng, Mr. Yang, Mr. Auer, Ms. Mittal, and other employees with relevant knowledge regarding the accused functionalities are in [redacted]. *See supra* Section II.B.

[redacted]

Third-party witnesses are also located in or near NDCA, and even Dr. Raleigh himself is closer to NDCA. In contrast, Google is not aware of any witnesses in this District, and Headwater does not have any presence in WDTX. Further, conservation of judicial resources favors transfer. As discussed *supra*, several potential third-party witnesses, including Charles Giancarlo, James Fitzgerald, Krista Jacobsen, and Cory Modlin, work or reside in NDCA. Transfer will prevent costly out-of-district motions to enforce compliance with any subpoenas. *See, e.g.*, Ex. 56.

Although Headwater has also filed several cases in this District against Google asserting the same or related patents, they are immaterial to the analysis.[11] First, Headwater has no specific connection with this District, as it has filed cases in other districts, including NDCA. *See, e.g.*, Ex. 6. Second, both the Federal Circuit and courts in this District have recognized that related cases have little weight when they "are in the early stages of trial," especially if such cases have pending motions to transfer themselves. *XR Commc'ns, LLC v. HP Inc.*, 2022 WL 3448746, at *6 (W.D. Tex. Aug. 17, 2022) (granting motion to transfer despite related cases in WDTX); *In re Google*, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017) ("Based on the district court's rationale … the mere co-pendency of related suits in a particular district would automatically tip the balance in non-movant's favor regardless of the existence of co-pending transfer motions and their underlying merits. This cannot be correct.").

Here, all of the other Headwater cases currently pending in this District are in early stages. Google has moved to transfer (or is moving to transfer) all of them to NDCA for similar reasons stated in this Motion.

[11] Headwater also filed several cases in this District against Apple Inc., all of which were terminated in very early stages and are similarly immaterial to the analysis. In addition, to the extent the Court finds later-filed cases relevant, Google filed a declaratory judgment action in NDCA against Headwater on a patent related to one of the asserted patents here (the '055 patent). *See Google LLC v. Headwater Rsch.,* LLC, No. 5:25-cv-7453 (N.D. Cal. Sept. 3, 2025).

[redacted]

### C. The Public Interest Factors Also Favor Transfer

#### (1) NDCA Has A Strong Interest In This Action

This factor focuses on the "significant connections between a particular venue and the events that gave rise to a suit." *In re Acer*, 626 F.3d at 1256; *see also Volkswagen II*, 545 F.3d at 318. NDCA has a strong local interest in this dispute for three reasons. First, the Headwater inventions were allegedly conceived in NDCA while Dr. Raleigh was working at ItsOn and Headwater Partners I LLC, the companies he founded in the San Francisco Bay Area. Ex. 7 at 16:13-19:2, 25:18-2; Compl. ¶¶ 11, 15-16; *see supra* Section II.A. Dr. Raleigh has asserted that he came up with the idea for "many of Headwater's inventions" during a collaboration between ItsOn (which was based in NDCA at the time) and Best Buy. Ex. 7 at 16:13-19:2, 25:18-2. Further, at least forty-eight provisional and nonprovisional applications to which the asserted patents claim priority list Dr. Raleigh as an inventor residing in Woodside, CA (as do five of the asserted patents) and were filed and prosecuted in NDCA. *See* Lonergan Decl. ¶¶ 15, 22; *see also* Exs. 1-5. That "[t]he patented technology was invented in, and the patents prosecuted from," NDCA demonstrates that the local interest factor favors transfer. *In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023).

Moreover, Headwater's Complaint spends numerous paragraphs explaining Dr. Raleigh's background, including his time working at Stanford, Clarity Wireless, Cisco, and Airgo Networks, all of which were located in NDCA. Compl. ¶¶ 5, 7-9. To the extent Dr. Raleigh's background is relevant (as Headwater seems to contend, given that this information appears in the Complaint), this further supports NDCA's interest in this action.

Second, the accused functionalities were primarily developed by employees in Google's NDCA offices. *See In re TikTok, Inc.*, 85 F.4th 352, 364 (5th Cir. 2023) ("[T]he place of the alleged wrong is one of the most important factors"). The key individuals who developed and

[redacted]

work on the accused functionalities are mainly based in NDCA. NDCA thus has a strong local interest because "the cause of action calls into question the work and reputation of several individuals residing in or near that district." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

Third, witnesses with knowledge of the prior art are based in NDCA. For example, Mr. Greenwalt, who was one of the early developers working on the Android Telephony stack in 2009, including its use of SIM-related technology, works at Google's [redacted] Chen Decl. ¶ 4. As courts in this District have held, "the Northern District of California has an interest in adjudicating disputes regarding prior art from its inventors." *Cortex MCP, Inc. v. Visa, Inc.*, 2023 WL 11990868, at *8 (W.D. Tex. Nov. 3, 2023); *see Valtrus Innovations Ltd. v. Google LLC*, 2025 WL 2076627, at *9 (N.D. Tex. July 22, 2025) (finding NDCA had a "stronger local interest in the case" than the transferor forum because "much of the relevant prior art" was developed in NDCA).

On the other hand, this lawsuit has no meaningful connection to WDTX. Headwater has no presence here, nor was its patented technology developed here. No relevant Google employees with responsibilities related to the design or development of the accused functionalities are based in WDTX, and Google's presence in Austin with respect to other technologies does not demonstrate a local interest in this case. "Because the accused [functionalities] were designed and developed in the transferee venue and are not related to Google's presence in Texas … the local interest factor should [be] weighted strongly in favor of transfer." *In re Google LLC*, 2021 WL 4427899, at *6; *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320-21 (Fed. Cir. 2021) ("Juniper's general presence in the [WDTX] is not enough to establish a local interest in that district comparable to that of the [NDCA].").

[redacted]

#### (2) The Remaining Factors Are Neutral

The other public interest factors—administrative difficulties flowing from court congestion, the court's familiarity with the law, and avoidance of conflicts from application of foreign laws—are neutral. WDTX has more open patent cases (498) than NDCA (216), but the median times to trial are roughly the same (approximately 28 months and 30 months respectively). *See* Exs. 53-55. Although this Court's default schedule could lead to a trial sooner than the average time to trial in NDCA, the Federal Circuit and courts in this District have found that congestion is "the most speculative" factor and that when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *WAG*, 2022 WL 9569437, at *7. Further, "neither discovery nor a Markman hearing have occurred in this case" so "transfer at this stage of litigation would not likely create any meaningful delays." *10Tales, Inc. v. TikTok Inc.*, 2021 WL 2043978, at *5 (W.D. Tex. May 21, 2021). Additionally, both courts are familiar and experienced with patent litigation issues, and there are no issues regarding conflict of laws or application of foreign law.

## V. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court transfer this case to NDCA.

[redacted]

Dated: December 4, 2025

Respectfully submitted,

JACKSON WALKER L.L.P.

*/s/ Nathaniel St. Clair, II*
Nathaniel St. Clair, II
Texas State Bar No. 24071564
nstclair@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile (214) 953-5822

Clement Naples (admitted *Pro Hac Vice*)
Jennifer Rabbino (admitted *Pro Hac Vice*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
cnaples@cgsh.com
jrabbino@cgsh.com
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

Gregory Sobolski (admitted *Pro Hac Vice*)
Thomas W. Yeh (admitted *Pro Hac Vice*)
Lucas Lonergan (admitted *Pro Hac Vice*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
650 California Street, Suite 2400
San Francisco, CA 94108
gsobolski@cgsh.com
tyeh@csgh.com
llonergan@cgsh.com
Telephone: (415) 796-4400
Facsimile: (415) 796-4499

Sami Al-Marzoog (admitted *Pro Hac Vice*)
Steven Peters (admitted *Pro Hac Vice*)
Jasmine Zhu (admitted *Pro Hac Vice*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, N.W.
Washington, DC 20037
salmarzoog@cgsh.com
speters@cgsh.com
jazhu@cgsh.com
Telephone: (202) 974-1500
Facsimile: (202) 974-1999

[redacted]

*Counsel for Defendant Google LLC*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, the undersigned hereby certifies that, on December 4, 2025, the foregoing document was filed with the Court via the CM/ECF system and all counsel of record who have appeared in this case were served with a copy of the foregoing documents via electronic mail.

*/s/ Nathaniel St. Clair, II*
Nathaniel St. Clair, II