CLEARY GOTTLIEB STEEN & HAMILTON LLP
Gregory K. Sobolski
(GSobolski@cgsh.com)
650 California Street, Suite 2400
San Francisco, California 94108
Telephone: 415-796-4390
Facsimile: 415-796-4499

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Clement Naples (*pro hac vice*)
(cnaples@cgsh.com)
One Liberty Plaza
New York, NY 10006
Telephone: 212-225-2516
Facsimile: 212-225-3999

*Additional counsel listed on signature page*

*Counsel for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:26-cv-07551-NW<br><br>**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO STAY**<br><br>Date: October 28, 2026<br>Time: 9:00 a.m.<br>Place: Courtroom 3<br>Judge: Hon. Noël Wise |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. The Three Related Actions ..... 2

B. The Patents Are All Part of the Same Family ..... 3

C. Technological Overlap Among the Three Cases ..... 3

D. Pending IPR and Reexamination Proceedings ..... 6

E. Stay Motions in the Related Cases ..... 6

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 7

A. The Early Stage of the Case Strongly Favors a Stay ..... 7

B. The PTAB Proceedings Across All Three Cases Will Simplify the Issues ..... 9

*1. The PTAB Proceedings Across the Three Related Cases Support a Stay* ..... 9

*2. The Pending IPR Petitions in This Case Alone Warrant a Stay* ..... 11

C. Headwater Will Not Be Prejudiced by a Stay of These Related Cases ..... 12

*1. Timing of the IPR Petitions* ..... 13

*2. Timing of the Stay Request* ..... 13

*3. Status of Review Proceedings* ..... 14

*4. Relationship of the Parties* ..... 14

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

## Cases

*Advanced Micro Devices, Inc. v. LG Elecs., Inc.*,
2015 WL 545534 (N.D. Cal. Feb. 9, 2015) ..... 14

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
No. 10-cv-02863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011) ..... 14

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. 17-CV-04738-WHO, 2018 WL 6574188 (N.D. Cal. Dec. 12, 2018) ..... 9, 13, 15

*Cortex MCP, Inc. v. Visa, Inc.*,
2026 WL 473294 (N.D. Cal. Feb. 19, 2026) ..... 8, 13

*DoDots Licensing Solutions LLC v. Samsung Electronics Co., Ltd.*
2024 WL 664807 (N.D. Cal. Feb. 16, 2024) ..... 8

*DSS Tech. Mgmt., Inc. v. Apple, Inc.*,
No. 14-CV-05330-HSG, 2015 WL 1967878 (N.D. Cal. May 1, 2015) ..... 9, 13

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988) ..... 7

*Finjan, Inc. v. Symantec Corp.*,
139 F. Supp. 3d 1032 (N.D. Cal. 2015) ..... 7, 8, 13, 14

*HD Silicon Solutions LLC v. Microchip Technology Inc.*,
No. 21-cv-08295-SK, 2022 WL 3084315 (N.D. Cal. Aug. 3, 2022) ..... 12

*Ho Keung Tse v. Apple Inc.*, No. C 06-06573 SBA,
2007 WL 2904279 (N.D. Cal. Oct. 4, 2007) ..... 7

*LBT IP II LLC v. Uber Techs. Inc.*,
2023 WL 322894 (N.D. Cal. Jan. 19, 2023) ..... 9, 12

*LELO, Inc. v. Standard Innovation (US) Corp.*,
No. 13-cv-01393-JD, 2014 WL 2879851 (N.D. Cal. June 24, 2014) ..... 9

*NFC Tech. LLC v. HTC Am., Inc.*,
2015 WL 1069111 (E.D. Tex. 2015) ..... 9

*Palo Alto Networks, Inc. v. Packet Intel. LLC*,
2020 WL 5760475 (N.D. Cal. Sept. 28, 2020) ..... 13

*PersonalWeb Techs., LLC v. Apple Inc.*,
69 F. Supp. 3d 1022 (N.D. Cal. 2014) ..... passim

*Security People, Inc. v. Ojmar US, LLC*,
2015 WL 3453780 (N.D. Cal. May 29, 2015) ... 11

*Telcom Ventures LLC v. Apple Inc.*,
No. 25-CV-05041-RFL, 2026 WL 84431(N.D. Cal. Jan. 12, 2026) ... 7

*Trusted Knight Corp. v. Int'l Bus. Machs. Corp.*,
No. 19-CV-01206-EMC, 2020 WL 5107611 (N.D. Cal. Aug. 31, 2020) ... 7

*Twilio, Inc. v. TeleSign Corp.*,
2018 WL 1609630 (N.D. Cal. Apr. 3, 2018) ... 12

*Uniloc USA, Inc. v. Apple Inc.*,
2018 WL 2387855 (N.D. Cal. May 25, 2018) ... 10, 11, 13, 14

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
759 F.3d 1307 (Fed. Cir. 2014) ... 14

*WSOU Investments LLC v. Juniper Networks Inc.*,
2022 WL 19709 (N.D. Cal. Jan. 3, 2022) ... 8

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 28, 2026 at 9:00 a.m., or as soon as counsel may be heard, before the Honorable Noël Wise, in Courtroom 3 located on the 5th Floor at Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, California 95113, Defendant Google LLC ("Google") will, and hereby does, present its Motion to Stay this matter. Google's Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the proposed order submitted herewith, all exhibits and other materials on file in this action, and such other written or oral argument as may be presented at or before the time this motion is heard and/or taken under submission by the Court.

**STATEMENT OF RELIEF**

Google respectfully moves the Court to stay this case, FCM III/eSIM, along with FCM I and FCM II.

DATED: September 3, 2026

Respectfully submitted,

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By: */s/ Clement Naples*
Clement Naples (*pro hac vice*)
*Counsel for Defendant Google LLC*

## I. INTRODUCTION

This case ("FCM III/eSIM") is related to two other cases before the Court ("FCM I and II").[1] All of the cases were filed by Headwater Research LLC ("Headwater") against Google and allege infringement by Google's Firebase Cloud Messaging ("FCM"). In total, there are 12 patents across the cases, and all of the patents are related to each other. In FCM I, IPRs have been instituted, or referred for merits review, on all four patents at issue. In FCM II, there is one patent at issue and the USPTO recently issued a Final Office Action in an *ex parte* reexamination proceeding finding 14 claims invalid. Google has asked the Court to stay the FCM I and FCM II cases pending resolution of these proceedings.[2] In this case, Google recently filed IPR petitions for four of the seven asserted patents. Google respectfully requests that this case, FCM III/eSIM, be stayed along with FCM I and FCM II.

All three factors that courts in this District apply to motions to stay pending IPR or *ex parte* proceedings favor a stay. First, this case is in its earliest stages: no schedule has been set, no claim construction order has issued, no trial date has been set, no depositions have been taken, and no expert discovery has occurred. Second, the instituted IPRs in FCM I, the *ex parte* reexamination (which Headwater has appealed to the PTAB) in FCM II, and the pending IPRs in this case will dramatically simplify the case. Here, Google challenges a substantial number of claims across four patents, and those patents are closely related to the remaining three—all seven patents share the same lead inventor, claim priority to the same foundational patent applications, and arise from the same patent family and specifications. The PTAB's decisions will necessarily inform the scope of the claims, validity issues, and claim-construction positions for the entire case. Moreover, the argument for a stay is further strengthened because all of the patents in FCM I and FCM II are

---

[1] Case No. 5:26-cv-01460-NW ("FCM I"); Case No. 5:26-cv-06192-NW ("FCM II"); Case No. 5:26-cv-07551-NW ("FCM III").

[2] FCM I, ECF No. 125; FCM II, ECF No. 75.

related to the asserted patents in this Action. In short, out of 12 ***related*** patents across all three cases that all involve the same accused product, four patents are already subject to instituted or completed review proceedings, one will be instituted imminently, and four are pending IPR institution. There can be no meaningful dispute that resolution of the IPRs will significantly impact and simplify all of the FCM cases. Third, Headwater is a non-practicing entity that does not compete with Google in any market and seeks only monetary damages; a stay will not cause it undue prejudice.

## II. FACTUAL BACKGROUND

### A. The Three Related Actions

On May 16, 2025, Headwater filed FCM I in the Western District of Texas, asserting that Google's Firebase Cloud Messaging service infringes U.S. Patent Nos. 9,615,192 (the "'192 patent") and 10,321,320 (the "'320 patent"). FCM I was transferred to this District on February 18, 2026. On July 27, 2026, in FCM I, Google added declaratory judgment counterclaims for noninfringement of U.S. Patent Nos. 9,232,403 (the "'403 patent") and 9,491,564 (the "'564 patent").

On August 27, 2025, Headwater filed FCM II, asserting U.S. Patent No. 9,198,117 (the "'117 patent") against the same FCM service. FCM II was transferred to this District on June 8, 2026.

On August 27, 2025, Headwater filed this FCM III/eSIM case, asserting seven patents—U.S. Patent Nos. 11,966,464 (the "'464 patent"), 11,405,429 (the "'429 patent"), 11,985,155 (the "'155 patent"), 9,973,930 (the "'930 patent"), 9,609,510 (the "'510 patent"), 8,639,935 (the "'935 patent"), and 11,096,055 (the "'055 patent") (collectively, the "Asserted Patents")—against Google's FCM service and eSIM-enabled devices. Specifically, Headwater alleges that FCM infringes four of the seven asserted patents, and that Google's eSIM-enabled devices and services infringe all seven patents. FCM III/eSIM was transferred to this District on July 20, 2026. FCM I

and FCM II were related to each other on July 7, 2026. On August 7, 2026, this case was related to FCM I.

### B. The Patents Are All Part of the Same Family

All twelve patents asserted across the three actions are related. Eleven of the twelve claim priority to the same group of patent applications—U.S. Application No. 12/380,780 and Provisional Application Nos. 61/206,354, 61/206,944, 61/207,393, and 61/207,739. The remaining patent incorporates those applications by reference. All twelve patents share the same lead inventor, Dr. Gregory G. Raleigh.

The patents at issue in FCM I ('192, '320, '403, and '564) and FCM II ('117) generally cover the same technology: servers that buffer messages and send those messages to devices based on triggers and devices that receive the messages where these devices have agents. They have the same specifications and thus will share much of the same prior art. The seven patents asserted in FCM III/eSIM are directed to related aspects, including message encryption and delivery to device agents ('935), device provisioning and credential management using agents ('510 and '055 patents), application-policy enforcement using device agents ('930), secure service-control channels to configure settings ('429, '464), and secure device data records based on agents ('155).

The Asserted Patents in this case are thus members of the same patent family as the FCM I and FCM II patents, sharing similar specifications and common priority applications, inventorship, and subject matter.

### C. Technological Overlap Among the Three Cases

The asserted patents' claim terms significantly overlap across all three cases, as shown in the chart below:

| Term | FCM I ('192, '320, '403, '564) | FCM II ('117) | FCM III/eSIM |
|---|---|---|---|
| **Secure execution environment** | "secure execution environment" ('192, claim 4; '403, claim 10; '564, claim 9) | "secure execution environment" (claim 6) | "secure execution environment" ('429, '464, '155) |

| | | | |
|---|---|---|---|
| **Device-side agent** | "device link agent" ('192, '320, '564); "device messaging agent" ('403) | "device messaging agent" | "particular device agent" ('935); "device agents" ('930) |
| **Secure link / channel to network** | "secure message link" ('192, '564); "secure Internet data message links" ('320); "secure Internet data connection" ('403) | "secure Internet data connection" | "service control link" ('935); "secure control channel" ('429, '464) |
| **Network-side server / controller** | "message link server" ('192, '564); "network server system" ('320); "network message server" ('403) | "network message server" | "network service controller" ('429, '464) |
| **Wireless end-user device** | "wireless end-user devices" ('192, '320, '564); "mobile end-user devices" ('403) | "mobile end-user devices" | "wireless end-user device" ('429, '464); ('930) |
| **Encryption of delivered message** | "encrypt function to encrypt the one or more messages" ('192, claim 2); "encrypted message" ('403, '564) | "encrypt the secure Internet data messages" (claim 4) | "generate an encrypted message" ('935) |
| **Identifier routing to device software** | "identifier/data pairs" ('192, claim 6); identifier identifying the agent ('403, '564) | "application identifier" mapped "to a software process" | "an identifier identifying the particular device agent, the identifier distinguishing the particular device agent from all other device agents" ('935) |
| **Transmission / delivery trigger** | "message delivery triggers" ('192, '320); "transmission trigger" ('564, claim 11) | "transmission trigger" (claims 16–18) | "trigger a transmission to maintain the service control link" ('935, claim 24) |

Moreover, in all three actions, Headwater accuses Google's Firebase Cloud Messaging service, and its allegations regarding the manner in which FCM infringes the asserted patents are materially similar. For example:

- Headwater alleges FCM uses device-side agents for receiving and supporting push messages from the FCM system to end-user devices:

| FCM I | FCM II | FCM/eSIM |
|---|---|---|
| "FCM supports receiving, over the secure link, upload messages forwarded by the **device link agent** from apps on the device."<br>Ex. 1 ('192 chart) at 63<br><br>"**a device link agent** (e.g. FCM client) . . . [receives] messages . . . (apps invoke FCM client and register to use FCM)"<br>Ex. 2 ('320 chart) at 30 | "FCM includes software for using FCM to receive push messages . . . Google applications/services include functionality for Firebase Cloud Messaging that uses a **device messaging agent** to receive push messages."<br>Ex. 3 ('117 chart) at 136 | "The Accused Instrumentalities are configured with **device agent software** to support push messaging from a push messaging system by Google or Google Cloud systems (e.g., Google's Firebase Cloud Messaging system)"<br>Ex. 4 ('930 chart) at 47 |

- Headwater alleges FCM establishes and maintains communications links between the FCM system and an end-user device for transmitting push messages:

| FCM I | FCM II | FCM/eSIM |
|---|---|---|
| "FCM's link interface maintains a single persistent connection (**secure Internet data message link**) with a device link agent (e.g. FCM client) on a wireless end-user device"<br><br>Ex. 2 ('320 chart) at 30 | "the communications link between Firebase Cloud Messaging system and Android devices comprises **a secure Internet data connection**"<br><br>Ex. 3 ('117 chart) at 62 | "there is a **service control link** between the Google Firebase Cloud Messaging system and each Android device compatible with Google's network"<br>Ex. 5 ('935 chart) at 10 |

- Headwater relies on the same theory that FCM uses identifiers in push messages to deliver messages to specific elements on a device:

| FCM I | FCM II | FCM/eSIM |
|---|---|---|
| "the FCM client receives push messages from the FCM system that contain a unique identifier (such as application package name) for a corresponding one of the software agents"<br><br>Ex. 2 ('320 chart) at 66 | "Google's FCM system receives multiple requests to push application data indicating a particular device and application. For example, an application name or identifier and/or a device identifier and/or a registration identifier can be used to send push notifications to the particular application on a particular device"<br><br>Ex. 3 ('117 chart) at 88 | "the Firebase push system used by Google generates an encrypted message comprising . . . an identifier identifying particular software that facilitates push messages for the application package and its components, including, for example, the particular software that performs receiving push messages for the application."<br><br>Ex. 5 ('935 chart) at 238 |

Much of the discovery in all three cases will thus come from the same Google witnesses with knowledge of how FCM functions. Similarly, there will be substantial overlap in documentary evidence regarding FCM. This has already been demonstrated by the fact that Headwater relies on much of the same evidence in its infringement claim charts for all three actions, including the same webpages and documentation. And the same prior art—including GTalkService, Google's predecessor product to FCM—is anticipated to be relevant in all three cases. In addition, claim construction issues will overlap across all three cases and be impacted by the pending IPR and *ex parte* reexamination proceedings.

**D. Pending IPR and Reexamination Proceedings**

In FCM I, IPRs have been instituted on every claim of the ’192 and ’320 patents following petitions by Amazon.com Services LLC. Google has also filed IPR petitions challenging all claims of the ’403 and ’564 patents. Google filed its ’403 patent petition on January 23, 2026, and the PTAB instituted review of all claims of that patent on July 2, 2026 (IPR2026-00203). Google filed its petition challenging the ’564 patent on March 27, 2026 (IPR2026-00271), and that petition was referred for merits review on July 28, 2026 and remains pending institution; Amazon also filed a joinder petition on May 26, 2026 (IPR2026-00361). In FCM II, the USPTO issued a Non-Final Office Action rejecting Claims 1–6, 9, 11–14, and 16–18 of the ’117 patent under Section 103. On April 23, 2026, the USPTO issued a Final Office Action maintaining those rejections. Headwater filed a response to the Final Office Action requesting reconsideration of the rejection on June 23, 2026, which the USPTO denied on July 6, 2026.

In FCM III/eSIM, Google has filed IPR petitions challenging the following claims:

- **’464 patent**: Claims 1–20 (all asserted claims)
- **’429 patent**: Claims 1–12 (all asserted claims)
- **’155 patent**: Claims 1, 2, 10, and 11 (four of eighteen asserted claims)
- **’055 patent**: Claims 1–13 (all asserted claims)

These petitions challenge a substantial portion of the claims Headwater asserts against Google from each of the four patents.

**E. Stay Motions in the Related Cases**

Google’s motion to stay FCM I pending resolution of the instituted IPRs is fully briefed and pending before this Court. FCM I, ECF No. 125. Google’s motion to stay FCM II pending final resolution of the *ex parte* reexamination of the ’117 patent is likewise fully briefed and pending. FCM II, ECF No. 75.

## III. LEGAL STANDARD

“Courts have inherent power to manage their dockets, including the discretion to grant a stay pending concurrent proceedings before the PTO.” *Trusted Knight Corp. v. Int’l Bus. Machs.*

*Corp.*, No. 19-CV-01206-EMC, 2020 WL 5107611, at *1 (N.D. Cal. Aug. 31, 2020) (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988)). "A stay is particularly justified where the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *Id.* (quotation omitted).

"Courts consider three factors when evaluating whether to stay a case pending inter partes review: '(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party.'" *Telcom Ventures LLC v. Apple Inc.*, No. 25-CV-05041-RFL, 2026 WL 84431, at *1 (N.D. Cal. Jan. 12, 2026) (quoting *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1025 (N.D. Cal. 2014)).

## IV. ARGUMENT

### A. The Early Stage of the Case Strongly Favors a Stay

Courts first "look[] to the question of whether litigation has progressed significantly enough for a stay to be disfavored." *PersonalWeb*, 69 F. Supp. 3d at 1025–26; *Finjan, Inc. v. Symantec Corp.,* 139 F. Supp. 3d 1032, 1035–36 (N.D. Cal. 2015). Factors courts have considered include "whether parties have engaged in costly expert discovery and dispositive motion practice," "whether the court has issued its claim construction order," and "whether the court has set a trial date." *Id.* A stay is "particularly appropriate for cases in the initial stages of litigation or in which there has been little discovery." *Ho Keung Tse v. Apple Inc.*, No. C 06-06573 SBA, 2007 WL 2904279, at *2 (N.D. Cal. Oct. 4, 2007).

This case is in its infancy. No schedule has been set. No trial date has been set. No deadlines for fact or expert discovery, dispositive motions, or pretrial have been established. No depositions have been taken. No expert discovery has occurred. The case was only recently transferred to this District and related to the other *Headwater v. Google* FCM actions. While claim construction was briefed prior to transfer, a Markman hearing has not yet been scheduled, and it is

unclear whether the parties will need to re-file or supplement the claim construction briefing. With that said, as discussed further below, given the institution of the IPRs and the relatedness of the patents, the intrinsic record for the patents in all the FCM cases will shift.

Courts routinely grant stays at more advanced stages than this. In *DoDots Licensing Solutions LLC v. Samsung Electronics Co., Ltd.* the court stayed a case after the transferor court had issued a claim-construction decision and seven months of fact discovery had occurred—including noticing "ten 30(b)(1) depositions, issu[ing] 33 third-party subpoenas, and serv[ing] 30(b)(6) deposition notices spanning 131 topics"—reasoning that "courts routinely grant stays even when claim construction has already occurred if substantial work lies ahead." 2024 WL 664807, at *2–4 (N.D. Cal. Feb. 16, 2024). In *Finjan*, the court granted a stay even though claim construction briefing and a Markman hearing had already occurred, because "substantial work still remains for this case to be ready for trial," "[n]ot a single deposition ha[d] been taken to date and both parties contemplate[d] additional document production," and "the Court ha[d] not issued its claim construction order or set any deadlines associated with expert discovery, summary judgment, pre-trial motions, and trial." 139 F. Supp. 3d at 1035–36. In *WSOU Investments LLC v. Juniper Networks Inc.*, this District found this factor favored a stay even where the transferor court had issued a claim-construction order because the transferee court "ha[d] not had a chance to consider claim construction issues and the parties have not made exchanges pursuant to this District's Patent Local Rules." 2022 WL 19709, at *3 (N.D. Cal. Jan. 3, 2022). And in *Cortex MCP, Inc. v. Visa, Inc.*, this District granted a stay where the parties had "engaged in some discovery and claim construction briefing" but no claim construction hearing had occurred, and there were no dates set for the close of fact or expert discovery, dispositive motions briefing, or trial. 2026 WL 473294, at *2 (N.D. Cal. Feb. 19, 2026).

This Action and the related cases are far earlier in the process than any of those. The first factor strongly favors a stay.

**B. The PTAB Proceedings Across All Three Cases Will Simplify the Issues**

The second factor—simplification—is "the most important factor bearing on whether to grant a stay." *NFC Tech. LLC v. HTC Am., Inc.*, 2015 WL 1069111, at *4 (E.D. Tex. 2015) (Bryson, J., sitting by designation). The applicable standard is "simplification of the district court case, not complete elimination of it by the PTAB." *LELO, Inc. v. Standard Innovation (US) Corp.*, No. 13-cv-01393-JD, 2014 WL 2879851, at *3 (N.D. Cal. June 24, 2014); *LBT IP II LLC v. Uber Techs. Inc.*, 2023 WL 322894, at *3 (N.D. Cal. Jan. 19, 2023). "A stay is favored where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue." *PersonalWeb*, 69 F. Supp. 3d at 1027. "In almost every motion to stay pending IPR, courts find the PTAB's decision is likely to simplify the issues because 'if the PTAB invalidates any of the claims at issue in the IPR petition, those claims will be mooted in the litigation.'" *Contour IP Holding, LLC v. GoPro, Inc.*, No. 17-CV-04738-WHO, 2018 WL 6574188, at *3 (N.D. Cal. Dec. 12, 2018) (quoting *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-CV-05330-HSG, 2015 WL 1967878, at *4 (N.D. Cal. May 1, 2015)).

*1. The PTAB Proceedings Across the Three Related Cases Support a Stay*

The simplification analysis should not be evaluated in isolation. Here, the combined PTAB proceedings across all three related cases present an overwhelming case for simplification. In FCM I, IPRs have been instituted on every claim of the '192, '320, and '403 patents, and the IPR petition challenging all claims of the '564 patent was referred for merits review on July 28, 2026. *Supra* at 6. In FCM II, the USPTO has issued a Final Office Action rejecting 14 of 18 claims of the sole asserted patent, including all independent claims, which Headwater has appealed to the PTAB. *Id.* And in this case, Google has filed IPR petitions challenging a substantial portion of the claims across four of the seven Asserted Patents. *Id.* Taken together, the PTAB is actively reviewing

patents from the same family, covering the same technology, and sharing similar specifications, across all three related cases.

*Uniloc USA, Inc. v. Apple Inc.* is instructive. 2018 WL 2387855, at *3 (N.D. Cal. May 25, 2018). There, the court stayed three related cases together—***including a case in which no IPR petition had been filed for the sole asserted patent***—because allowing that "case to proceed while the two related cases are stayed would also be needlessly inefficient." *Id.* The court emphasized that the patents "largely share named inventors and concern substantially similar" accused products, and that proceeding piecemeal "creates a real risk of highly inefficient discovery that could require the same individuals—including third parties—to undergo multiple rounds of overlapping depositions and discovery requests." *Id.* The court further reasoned that "[b]ecause the patents and claims that will ultimately be at issue across the cases will be informed by the IPRs, staying the three related cases will allow the parties and the court to know what issues will be tried to a jury when determining the structure and composition of eventual trials." *Id.*

The same applies here. The three cases "concern substantially the same parties, property, transaction or event" and handling them separately would result in "an unduly burdensome duplication of labor and expense," which was confirmed when the Court granted Google's unopposed motion to relate the three cases under Civil L.R. 3-12. ECF No. 105; Civil L.R. 3-12. If the FCM I and FCM II cases are stayed, proceeding with FCM III/eSIM would force the parties into precisely the "unduly burdensome duplication of labor and expense" the local rules seek to avoid, including deposing the same witnesses, producing the same documents, and litigating the same claim-construction and prior-art issues that the PTAB is actively addressing in the related cases.

The relationship among the cases is also reflected in the overlapping claim terms that appear in the asserted patents. *Supra* at 3–5. Because of the overlap in terms in both sets of patents, the

PTAB's constructions and validity determinations in the instituted FCM I proceedings and the FCM II reexamination will be informative here.

The overlap in discovery further confirms that a complete stay is appropriate. The same Google engineers will testify about FCM's architecture and operation in all three cases. *Id.* The same documents will be produced, and the same prior art—particularly GTalkService—will be at issue. *Id.* Proceeding in one case would generate duplicative discovery, potentially require multiple rounds of depositions of the same witnesses, and risk inconsistent claim-construction or validity determinations. This is precisely the inefficiency courts have found warrants a complete stay.

2. *The Pending IPR Petitions in This Case Alone Warrant a Stay*

Even viewed in isolation, this case will benefit from a stay given that four of the seven patents have pending IPR petitions. This District and others have repeatedly held that a stay of an entire action is warranted where the patents under review are related to those not under review.

In *Uniloc v. Apple* (discussed above), the court found this factor favored a stay where some asserted patents were not challenged and even though "the PTAB has not yet determined whether to institute the IPRs" because "any concern that the motion is premature is alleviated by the short time frame of the initial stay and the Court's willingness to reevaluate the stay if *inter partes* review is not instituted." 2018 WL 2387855, at *2; *cf. Security People, Inc. v. Ojmar US, LLC*, 2015 WL 3453780, *3–*5 (N.D. Cal. May 29, 2015) (staying case prior to PTAB decision on institution).

In *PersonalWeb*, IPRs covered only 15 of 34 claims across seven patents, yet the court stayed the entire case because "all seven patents claim priority to U.S. Patent Application No. 08/425,160 and share a common specification" and "all patents involve the same subject matter." 69 F. Supp. 3d at 1028. The court reasoned that "the PTAB's final decision regarding the claims subject to *inter partes* review may overlap with claims not subject to *inter partes* review" and would "further simplify the issues and trial of this case." *Id.* at 1027–28.

In *LBT IP II*, IPR was instituted on only two of four patents, yet the court stayed the entire case because "there is enough overlap between the four patents that the simplification of the issues resulting from the PTAB's decisions on the '855 and '289 Patents will extend to the '724 and '355 Patents." 2023 WL 322894, at *3. The court relied on the fact that "the same products are accused under all of the patents-in-suit, which share, among other things, subject matter and similar claim limitations and elements." *Id.*; *see also HD Silicon Solutions LLC v. Microchip Technology Inc.*, No. 21-cv-08295-SK, 2022 WL 3084315, *2–3 (N.D. Cal. Aug. 3, 2022) (staying entire case even though IPR petitions had been denied on two of the patents, finding that "even if there were no common claims or common accused devices, there would still be sufficient overlapping discovery to warrant staying the entire case pending the IPR proceedings"); *Twilio, Inc. v. TeleSign Corp.*, 2018 WL 1609630, at *2 (N.D. Cal. Apr. 3, 2018) (staying all three patents even though IPR covered only two, because proceeding "only on the '021 [patent]" risked "a second trial on the other two patents if they survive IPR" and it would not make "sense to proceed on all three patents when two of them may later be invalidated").

The same reasoning applies here. All seven patents in this action share the same lead inventor, Dr. Gregory Raleigh. All seven claim priority to or incorporate by reference the same foundational patent applications: U.S. Application No. 12/380,780 and Provisional Application Nos. 61/206,354, 61/206,944, 61/207,393, and 61/207,739. All seven are asserted against Google's eSIM-enabled devices and services. The PTAB's claim-construction analysis, prior-art determinations, and validity rulings for the four IPR patents will therefore necessarily inform the parallel issues for the remaining three patents, which share specifications, terminology, and prior art.

### C. Headwater Will Not Be Prejudiced by a Stay of These Related Cases

The third factor asks "whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *PersonalWeb*, 69 F. Supp. 3d at 1025. Courts evaluate this

through "a four sub-factor analysis considering: (i) the timing of the reexamination request; (ii) the timing of the request for stay; (iii) the status of reexamination proceedings; and (iv) the relationship of the parties." *Contour IP Holding*, 2018 WL 6574188, at *6. "Courts have repeatedly found no undue prejudice unless the patentee makes a specific showing of prejudice beyond the delay necessarily inherent in any stay." *Palo Alto Networks, Inc. v. Packet Intel. LLC*, 2020 WL 5760475, at *2 (N.D. Cal. Sept. 28, 2020). In *Uniloc*, the court found no undue prejudice in staying all three related cases together, emphasizing that Uniloc did not compete with Apple, that "the delay inherent in the reexamination process does not constitute, by itself, undue prejudice," and that the timing of Apple's motions was "reasonable in light of the procedural landscape." 2018 WL 2387855, at *3–4. The same considerations apply here.

*1. Timing of the IPR Petitions*

Google filed its IPR petitions within the one-year statutory deadline provided by 35 U.S.C. § 315(b). Courts in this District do not infer dilatory motive from the timely exercise of statutory rights. *Finjan*, 139 F. Supp. 3d at 1036 ("[T]he Court declines to condition a stay on [defendant] seeking IPR earlier than the end of its statutory deadline, or to read a dilatory motive into the timely exercise of its statutory rights."); *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-CV-05330-HSG, 2015 WL 1967878, at *4 (N.D. Cal. May 1, 2015) ("The Court declines to read a dilatory motive into Defendant's timely exercise of its statutory rights.").

*2. Timing of the Stay Request*

Google has acted promptly in bringing this motion. This case was only recently transferred to this District and related to the FCM cases. Google filed this motion shortly after the case was reassigned and just days after the IPR petitions were filed. The early stage of the case relative to the PTAB proceedings further supports a finding that the stay request is timely. *Cortex MCP*, 2026 WL 473294, at *2 (finding that the timing was reasonable where the case had been transferred to

NDCA and "no dates set for the close of fact or expert discovery, dispositive motions briefing, or trial").

*3. Status of Review Proceedings*

Google's IPR petitions have been filed and are pending before the PTAB. Even before institution, courts in this District have routinely granted stays where, as here, there is significant potential for simplification. *Finjan*, 139 F. Supp. 3d at 1037 (granting stay before institution because denying stay meant "the parties and the Court would expend significant resources on issues that could eventually be mooted by the IPR decision"); *Uniloc USA, Inc. v. Apple Inc.*, 2018 WL 2387855, at *3 (N.D. Cal. May 25, 2018) (granting pre-institution stay of three related cases, with reconsideration at the institution stage); *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, 2015 WL 545534, at *2–5 (N.D. Cal. Feb. 9, 2015) (granting stay pending IPR petitions not yet decided covering all asserted claims of nine patents). Should the PTAB institute review, the case for a continued stay will only strengthen. Should any petition be denied, the Court may revisit the scope of the stay at that time.

*4. Relationship of the Parties*

Headwater is a non-practicing entity. It does not manufacture products, does not compete with Google in any market, and seeks only monetary damages. A stay therefore cannot cause it competitive harm or irreparable marketplace injury. "Unlike patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages." *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-cv-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011). The converse is equally true: where the parties are not competitors, the delay inherent in a stay does not diminish the damages that may be available, but only "delay[s] realization of those damages." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014). This sub-factor weighs strongly in favor of a stay. *See PersonalWeb*, 69 F. Supp. 3d at 1030 (no prejudice where

"the parties here do not compete in the marketplace"); *Contour IP Holding*, 2018 WL 6574188, at *6 (same).

## V. CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court stay FCM III/eSIM—together with the related FCM I and FCM II cases—pending resolution of the IPR and reexamination proceedings across all three actions, including any appeals.

Dated: September 3, 2026

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Clement Naples*
Clement Naples

Clement Naples (*pro hac vice*)
(cnaples@cgsh.com)
One Liberty Plaza
New York, NY 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

Thomas Yeh (SBN 287118)
tyeh@cgsh.com
650 California Street, Suite 2000
San Francisco, CA 94108
Telephone: 415-796-4400
Facsimile: 415-796-4499

Gregory Sobolski (Bar No. 267428)
gsobolski@cgsh.com
650 California Street, Suite 2400
San Francisco, CA 94108
Telephone: 415-796-4400
Facsimile: 415-796-4499

Sami Al-Marzoog (*pro hac vice*)
2112 Pennsylvania Avenue, N.W.
Washington, DC 20037
salmarzoog@cgsh.com
Telephone: (202) 974-1500
Facsimile: (202) 974-1999

*Counsel for Defendant Google LLC*